Charles W. Peet and Eileen D. Peet, His Wife, Plaintiffs-Appellees, v. Dolese & Shepard Co., a Corporation, Defendant-Appellant.

### Gen. No. 11,667.

Second District, Second Division.
May 23, 1963.
Rehearing denied June 14, 1963.

Thomas J. Downs & William W. Curran, of Chicago, and Gray, Thomas, Wallace & O'Brien, of Joliet (Thomas J. Downs, William W. Curran and Thomas Feehan, of counsel), for appellant.

Francis J. Loughran, Dunn, Stefanich & McGarry, of Joliet (Francis A. Dunn, Daniel L. Kennedy and Harry D. Leinenweber, of counsel), for appellees.

CROW, J.

The plaintiffs, Charles W. Peet and Eileen D. Peet, his wife, the owners of certain premises located in Joliet, sought damages from the defendant, Dolese and Shepard Co., for alleged injuries to their residence allegedly caused by blasting operations, by explosives, in the defendant's stone quarry. The complaint was filed January 29, 1960. The defendant answered, admitting it used explosives, alleging that the loading of the explosives was insufficient to cause the damage, and alleging the blasting practices were in accordance with customary practices in safe quarry operations. The case was tried without a jury and the Court found for the plaintiffs and assessed damages at $3,000, for which a judgment was entered. The defendant appeals.

The defendant's theory is that the plaintiffs failed to establish that the acts of the defendant caused the alleged damage and that the judgment is against the manifest weight of the evidence. The plaintiffs' theory is that the blasting did damage their residence, the judgment for $3,000 is justified, and certain seismological evidence presented by the defendant, though admissible, is not truth per se but is to be weighed and considered with all the other evidence.

The plaintiffs' evidence consisted of the testimony of the plaintiff Charles W. Peet, Mrs. Ann Naughter, the mother of Mrs. Peet, and Levon Seron, an architect, engineer, and a graduate of Massachusetts Institute of Technology, as an expert witness.

The defendant offered as witnesses Tim Lewellen, Superintendent of National Stone Company, which is owned and operated by Dolese and Shepard Co., and Jules E. Jenkins, a registered engineer, specializing in

seismological disturbances and the measurements of industrial noises, as an expert witness.

■ The defendant, at the outset, complains of allegedly incompetent reporting of the proceedings had in the trial court; says that it has a constitutional right to a review; and says that the present transcript certified to by the Trial Judge takes from the defendant its right to review. The defendant refers us to no authorities on this point. The Trial Court in its final order stated as follows:

> "The Court is advised that in abstracting the transcript of testimony, the questions and answer as set forth in court reporter's transcript pages 152 to 209, inclusive, are so inaccurately set forth that it was next to impossible to prepare an abstract which would be of any help to this court or make sense. An attempt was made to abstract those questions and answers which bore some semblance of reason."

The plaintiffs contend that if there was any question as to the accuracy of the transcript the defendant's remedy (at least initially) was before the Trial Court and not the Appellate Court. We think the plaintiffs' contention is, in substance, correct, but, nevertheless, in reviewing the testimony we have been confronted with some apparent inaccuracies therein and the difficulty at times of attempting to read understandingly certain portions of the testimony as shown by the abstract. Part of this may be due to faulty reporting. Part, however, may be due to faulty abstracting. The plaintiffs have filed a supplemental abstract. Apparently the defendant took no steps in the Trial Court to object to the reporter, or her competency, or to the transcription. The record bears the customary certificates of the Trial Judge and the Clerk. For present purposes it will have to be ac-

362

cepted and considered sufficient. No application was made by the defendant to the Trial Court to make the record speak the truth, if it was deemed not to, or speak any differently than it does: Anderson v. Anderson (1942), 380 Ill 435, 44 NE2d 54.

Charles W. Peet testified that he and his wife own their home; they've lived there 14 years; it is about 37 years old; at approximately 4:00 or 4:30 p. m., on March 8, 1957, he was home; about 5:00 p. m. there was set off a blast at the stone quarry to loosen stone. It was noticeable and quite heavy. Plaster cracked. Dishes fell out of a cupboard. Shortly thereafter he went to the basement where he noticed a vertical crack on the east wall. On the west wall there was a half inch opening. There were plaster cracks in the living room, and in the bedroom. He heard other blasting from 1957 to 1959; in March, 1958 there was heavy damage; on April 12, 1959, a large stone from a blast landed in his yard, hit his truck, and fine gravel hit the roof of his house; on March 19, 1958, more plaster was cracked in the kitchen and around the chimney from the basement to the top of the house; the cracks allegedly caused by the blasting of March 8, 1957 were not in the house prior to that time. The blast vibration shook the house, plaster chipped, there were finger sized cracks. His house is 800–1000 feet east of the quarry. The blast came in a northerly or westerly direction from the quarry. He stated that prior to March, 1957 he never had occasion to go down and examine the basement for cracks, there were no cracks in the basement from 1947 to 1957, and that he noticed immediately after the blast of March 8, 1957 the vertical crack in his basement wall. There were certain photographs of the basement walls in evidence. The rock that hit his truck in April, 1959 was in evidence. The defendant settled for the damages done by that

rock. The basement walls were eight inch concrete blocks.

Mrs. Ann Naughter, mother of Mrs. Peet, testified that a heavy blast shook the house on March 8, 1957 a little after 4 p. m., and that it came from the quarry. Later there was a hard blast. It felt like a tornado. It rocked the house. There was dust. The air got heavy. There were cracks by the chimney, the front door, and in the dining room.

Levon Seron, architect, engineer, graduate of Massachusetts Institute of Technology, and licensed real estate broker, testified he viewed the premises in November, 1961 and examined the cracks and the general area of the home. He found the first floor plaster cracks, basement exterior walls cracks in the concrete block foundation on the interior and exterior, and cracks over the front door which were not straight but irregular. He described other cracks in the bedrooms, kitchen, etc. He said if blasting had occurred in close proximity such could cause certain of the cracks. He testified that in his opinion the house would have to be repaired, and there would have to be some replacement; it would cost from $200 to $250 for plaster patching and repair; the foundation would require some replacement, would necessitate raising the house, removing the blocks, $2,000 to crib and protect and get the preparatory work done to build the foundation walls; to replace the blocks and backfilling would cost $2,000; and that it would cost, he felt, between $4,000–$5,000 to put the property in good condition. He further testified that the horizontal cracks might be caused by earth pressure, and that in his opinion from $500 to $1,000 could be attributed to previous conditions or natural causes, not to blasting, and about $3,500–$4,000 to blasting. There are, he said, other causes for wall cracks than blasting. Certain of these cracks could have been caused, or aggravated by blasting.

364

The Court asked Seron the following questions:

"Assuming that the blasting from Dolese and Shepard Company caused the damage in this house, would there be some force extended through the air or through the ground, or both, or from some other force, or what?"

and the witness answered:

"I would say through the air and ground, it could be both. I would qualify my answer, and I don't know the size of the blast, what it was at the time, but if there was an overcharge of an enormous amount of dynamite, it could or can react in the air as well as the ground."

He said if an explosive charge was properly placed and tested there could be or would be no damage.

It was stipulated that the defendant owned and operated the quarry, used explosives on March 8, 1957, and periodically did so in the operation of the business, the Dolese & Shepard Company land is approximately adjoining the plaintiffs' residence, and the quarry is 800 to 1000 feet from their residence.

Tim Lewellen, for the defendant, Superintendent of National Stone Co., owned and operated by the defendant, said it used commercial explosives more than once a week, setting them off sometimes at noon, sometimes in the late afternoon at the end of operating periods; he testified that the defendant used explosives on March 8, 1957; he determined the depth of the hole; the Atlas Powder Company loaded the shot under his direction; he did not personally load it; he observed the loading. On that date explosives were used at what is commonly called the south wall; this was 800–1000 feet from the plaintiffs' house; the total amount of dynamite used was 3,295 pounds in several holes, some at the depth of 76′ and some at the depth of 81′. There was blasting May 6, May 12, May 29,

1958,—at 81 foot depths,—2683 pounds of explosives on one occasion,—3500 pounds on another,—3166 pounds on another occasion. Those were 800–900 feet from the plaintiffs' residence. The explosives were gelatin and ammonium nitrate with nitroglycerin. He said some explosions bring down more rock than anticipated, but shock from an explosion would not do that. When the piece of rock was blown over to the plaintiffs' lot that was from a little blast, it was not in their plan to send it 800 feet, and they had taken every precaution. He said dynamite is T.N.T., the expression dynamite is tricky, and it is possible for it to do the unexpected thing on occasions. He said he did not believe there is a way to escape human error.

Jules E. Jenkins, a registered engineer, specializing in seismological disturbance and the measurements of industrial noises, an expert witness for the defendant, testified that seismology is the science pertaining to the movement of earth. He has tested many buildings with respect to the effect of blasting and conducted measurement tests as to blasting in many quarries. A portable seismograph is used. When explosives are used in quarry operations there is a wave motion known as energy, travelling in the earth, and it can be determined by the seismograph. He had been to this quarry on many occasions. Force or energy so created follows the course of least resistance in the earth. In terms of quarry operations with embedded blasting the airborne effect of blasting is nothing so far as structural effect or damage to a building nearby is concerned. With regard to personal property, it will knock such loose from hangings. Those manifestations would have no effect on concrete foundations. The only possible effect on the foundation is through the earth; the air blast would have no effect on plaster in rooms. On December 19, 1956 and on September 6, 1960 he went to the

Peet residence at the time test blastings were made and seismograph measurements thereof were made in their home, and he testified as to the details of those shots, and measurements, 4433 pounds of explosives being used one time, 3291 pounds another time, and 2783 pounds another time, and he said the first test measurement was rated as having 37% of force compared to 100% for damage, and the others were rated at 10% of allowable vibration limits. A summarization of those test measurements is in evidence. In one of the tests the explosive was at a 75 foot depth, and in the others at a 60 foot depth. All tests were made at or about noon. He said they were not extensive enough to do any damage to the structure. The damage criterion is predicated on plaster. It is the building material which falls first. He further testified that no seismograph recordings were taken on March 8, 1957; he did not know what the defendant put in the blasting hole on March 8, 1957, or the amount of explosives. There were variables to take into consideration,—the shape of the explosive, the direction of the blast, the wind direction, the temperature, weather conditions, condition of the structure, location of the blasting hole, the force of the blast, and many others. He said the cracks in the Peet residence definitely could not have been due to embedded blasting. He said that transmission of the force of blasting to the Peet home had to go through the earth. He didn't know the variables involved here other than the distance of the house and the material by which the force was transmitted, and he said that it was necessary to take variables into consideration, and "any shot put up will have a certain amount of variables, come what may . . . you will have variables with dynamite, you will have variances in the distances of rocks, with, if hard rock and spot soft, they are things that are natural parts of the

business. Within the working range of benches, I don't feel that they could by blast in that be enough energy in the ground to move. that house at a distance of 800 feet."

■ One who makes use of an explosive in the ground near the property of another, when the natural and probable, though not inevitable, result of the explosion is injury to such property of the other, is liable for the resulting injury, however high a degree of care or skill may have been exercised in making use of the explosive; it is a matter of common knowledge that the use of dynamite as an explosive is intrinsically dangerous; this includes consequential injury resulting from an explosion by reason of concussion or vibration, as well as an injury resulting from rock or debris, etc. being thrown upon or against the other property; in a case where there is liability the proper measure of damages is the cost of repairing the building and restoring it to its proper condition as it was before it was damaged by the explosion: Fitzsimons etc. Co. v. Braun et al. (1902) 199 Ill 390, 65 NE 249; Baker et al. v. S. A. Healy Co. et al. (1939), 302 Ill App 634, 24 NE2d 228; Opal et al. v. Material Service Corp. (1956), 9 Ill App2d 433, 133 NE2d 733. It is not necessary that there have been negligence by the defendant. It is necessary that there be a causal connection between the alleged damage and the blasting operation. This is the majority view and is followed in Illinois.

■ After considering all of the testimony, it is apparent that it is in some aspects contradictory. We think that the evidence was sufficient that the Trial Court, as the trier of the facts, could determine that the preponderance thereof established a casual relation between the blasting operations and the damages and we believe that the finding of the Trial Court is not against the manifest weight of the evidence.

The Court was required to weigh the evidence and, having, as we do not, an opportunity to observe the witnesses, the Court had to determine their credibility and the weight to be attached to the testimony of each, taking into consideration all the relevant factors, including their interest, if any, in the subject matter. Taking all the evidence into consideration, the Trial Court, as the trier of the facts, necessarily had to draw reasonable inferences and conclusions therefrom. We cannot say an opposite conclusion is clearly evident, or that the determination is palpably erroneous, and hence the judgment is not against the manifest weight of the evidence; it is not our province to substitute our judgment for that of the trier of the facts: Bunton v. Illinois Cent. R. Co. (1957) 15 Ill App2d 311, 146 NE2d 205; cf. Wynekoop v. Wynekoop et al. (1950) 407 Ill 219, 95 NE2d 457. The credibility and weight of the testimony of the expert seismograph witness were for the Trial Court, as the trier of the facts, just as in the case of any witness, and it was for the trier of the facts to say, in the light of all the evidence, whether this alleged damage was attributable, or not, to vibrations from the defendant's blasting operations: Pope etc. v. Overbay (1954) 196 Va 288, 83 SE2d 365. The testimony of an expert witness is not to be accepted as truth per se, but must be judged as to weight and credibility by the same rules applicable to other witnesses: Gunther et al. v. E. I. Dupont De Nemours & Co. (1957) 157 F Supp 25, DCND W Va. The weight and value of the testimony of expert witnesses, both for the defendant and the plaintiff, largely depend on the foundations of fact and reason upon which their opinions stand, all of which seems to have been gone into to whatever extent the parties desired and all of which was before the Court: Chicago & N. W. Ry. Co. v. Town of Cicero (1895) 154 Ill 656, 39 NE 574.

In Republic Steel Corp. v. Peoples et al. (1954) CA 5th, 217 F2d 236, referred to by the defendant, the substantive law of Alabama, which was applicable, was different than here, requiring proof of negligence by the defendant in its explosives operations, and there was no such proof. In Pope etc. v. Overbay (1954) 196 Va 288, 83 SE2d 365, cited by the defendant, the verdict of the jury was for the defendant; the Trial Court, on the plaintiff's motion, set it aside and entered a judgment for the plaintiff; the Virginia Court of review reversed the Trial Court, reinstated the verdict, and entered a judgment for the defendant, holding the evidence was sufficient to sustain the verdict,—equally here, we believe the evidence is sufficient to sustain the determination of the trier of the facts. In Gunther et al. v. E. I. Dupont De Nemours & Co. (1957), 157 F Supp 25, DCND W Va there was involved a trial court determination, upon a considerably different state of facts, in a case where the plaintiffs sought relief different, in material respects, from that sought here; the jury found that the plaintiffs' real estate had not been damaged as the proximate result of explosives testing operations by the defendant—and the Trial Court accepted and agreed with that jury determination.

 The plaintiffs' expert witness's testimony as to what the actual damages would be is not precisely exact, because he was asked to differentiate between damages caused by blasting and those attributable to previous unconnected conditions and testified that "$3500 to $4000" was attributable to "blasting" and "$500 to $2000" to the previous condition. There was no evidence to the contrary, however. The assessment of damages made by the Court is within the permissible range of the evidence as to the cost of repairing the building and restoring it to its condition as it was before the damage by the explosions.

We think there is sufficient evidence to support the judgment, and it will be affirmed.

Affirmed.

WRIGHT, PJ and SPIVEY, J, concur.