Edmund J. Skiba, Plaintiff-Respondent, v. Earl S. Ruby,
Defendant-Petitioner.

Gen. No. 52,799.

First District, Third Division.

July 18, 1969.

■■■■■■■
■■■■■■■■■■■

Joseph A. Bailey and Jerome H. Torshen, of Chicago, for plaintiff-respondent.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard, George S. Miller, and Frederick W. Temple, of counsel), for defendant-petitioner.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is a petition by the defendant for leave to appeal from an order granting a new trial in a personal injury suit. The jury's verdict was in favor of the defendant but the trial court set the verdict aside on the ground that it was contrary to the weight of the evidence.

The suit arose out of a two-car collision which occurred about noon on Milwaukee Avenue, Chicago, at a point where the avenue is an eight-lane, two-way thoroughfare. The plaintiff was driving northwest in the fourth lane from the curb, having turned left onto Milwaukee Avenue from a side street. The defendant was moving from the curb lane, where he had been parked, toward the fourth lane when the two cars collided.

The plaintiff testified that he was driving at a speed of 15 to 18 miles per hour. He saw several cars parked along the curb. The front car had a driver (the defendant) but was motionless. When the plaintiff's auto was about ten feet to the rear of this car, the defendant moved forward and started to make a sharp turn to the left—the plaintiff's impression was that the defendant was going to make a left turn. The plaintiff swung his auto to the left and applied his brakes; his auto diagonally crossed the two yellow lines dividing the thoroughfare and came to a stop. As his auto stopped, the plain-

tiff looked to his right and saw the defendant's car coming at him at a 90° angle. Its left front struck his auto to the rear of the right door. After the accident he and the defendant exchanged identification. According to the plaintiff the defendant said that he intended to turn left at the next intersection, that he had never seen the plaintiff's auto and wanted to know where it came from.

The defendant testified that he was parked at the curb and that he intended to drive northwest to the next corner and turn left. He started his motor, pulled forward a few inches and then—lacking an outside rearview mirror—turned his head completely to the side and rear. The closest vehicle moving northwest was about a half block away and he saw no auto about to turn left from a side street. He turned his head to the front and pulled out almost completely into the second lane. As he did so he turned on his left directional signal because he knew he would be veering toward the left. He looked into his rearview mirror and saw that the auto he had first seen a half block away was still "quite a way's down" and proceeding slowly. He then drove slowly across the second lane toward the third and fourth lanes. As he reached the fourth lane, he started to turn his wheels to the right to follow the path of Milwaukee Avenue. According to the defendant about 80% to 90% of his car was in the fourth lane when it collided with the plaintiff's auto. The collision damaged his left front fender and bumper and one left headlight. He admitted that he did not see the plaintiff's auto before the collision.

A Chicago police officer investigated the accident shortly after it happened. He testified that he found the defendant's car parked at the curb and the plaintiff's auto in the center of the street. He saw skid marks made by the plaintiff's auto which showed that the auto was traveling northwest and upon impact slid to the side. The marks were straight and about six to eight feet long;

from the point of impact, they extended sideways about one to two feet. The marks indicated to the officer that the plaintiff's auto stopped abruptly.

The officer also testified that a cement-like substance near the curb stuck to the right tires of the defendant's car and showed exactly the path of the car from the parked position to the point of the impact. The tracks showed that the vehicle was next to the curb when it started up, that the wheels were turned and the car more or less "arced in" at an angle between 45° and 90° from the curb to the plaintiff's auto. The officer's impression was that the driver of the car was making a "U" turn. However, the officer's diagram of the scene and police report did not show that the defendant's car was making a "U" turn or was in an arc at the time of the accident. According to the officer, there was no indication that either vehicle exceeded the 30 miles per hour speed limit.

■■ Upon this evidence the jury returned a verdict for the defendant. The trial court disagreed with the jury; the court was of the opinion that the evidence preponderated in favor of the plaintiff and for this reason granted the plaintiff a new trial. It is the trial court's duty to set aside a verdict if it is not sustained by the greater weight of the evidence. A motion for a new trial is addressed to the discretion of the judge and his judgment will not be reversed except for a clear abuse of discretion, which must affirmatively appear in the record. Potter v. Ace Auto Parts and Wreckers, Inc., 49 Ill App2d 354, 199 NE2d 618 (1964).

■ The standard to be applied in reviewing the trial court's judgment is whether the jury's verdict was contrary to the preponderance of the evidence—not, as suggested by both parties in their briefs, whether the verdict was contrary to the manifest weight of the evidence. The manifest weight of the evidence standard prevails in a court of review when a jury's verdict is approved by the

trial judge, not when it has met his disapproval. Rodriguez v. Chicago Transit Authority, 58 Ill App2d 150, 206 NE2d 828 (1965).

■ The evidence on both the issues of the defendant's negligence and the plaintiff's contributory negligence preponderated in favor of the plaintiff. The evidence showed that the defendant crashed into the side of the plaintiff's auto after having failed to keep a proper lookout while shifting lanes (and perhaps while making an illegal turn). There was evidence that he swung from the curb to the fourth lane at a 45° to 90° angle and he admitted that he did not see the plaintiff's auto until the impact. He notes that in pulling away from the curb and in shifting lanes, he looked behind him once by turning his head and once by means of a rearview mirror, but these precautions were inadequate in view of the width of the street and the number of lanes he was traversing. The defendant claims that he could not watch southeast bound traffic which was turning left in front of him and look out for traffic behind him at the same time, but if this is true he should have continued forward without changing lanes until adequate caution was possible—even if this meant missing the street where he wanted to turn. He also contends that his turn signal was on but this did not give him a license to change lanes without adequate precaution.

■ On the issue of the plaintiff's contributory negligence, the evidence just as clearly shows that the plaintiff was not negligent—that he drove within the speed limit, kept a proper lookout and took appropriate action when he saw the defendant coming. To establish the plaintiff's negligence, the defendant relies on the skid marks left by the plaintiff's auto, the plaintiff's failure to sound his horn and his alleged failure to bring his car under control. However, the officer testified that there was no evidence of speeding and that the skid

marks merely indicated that the plaintiff's auto stopped abruptly. The plaintiff testified that he put on his brakes, swung to the left and was stopped when the defendant hit him. This testimony was supported by the path of the skid marks and the location of the damage on the cars. Although he did not sound his horn, the defendant cannot complain that the plaintiff failed to take all steps which might have prevented the accident. The plaintiff had to react quickly to an emergency created by the defendant and he did take affirmative measures to avoid the collision.

The trial judge did not abuse his discretion in setting aside the verdict and the petition for leave to appeal from the order granting a new trial will be denied.

Petition denied.

SULLIVAN, P. J. and SCHWARTZ, J., concur.