NANCY JANE BOONE, Admr. of the Estate of JOHNNIE BOONE, Deceased, *et al.*, Plaintiffs-Respondents, *v.* GEORGE P. BAKER *et al.*, Trustees of the property of PENN CENTRAL TRANSPORTATION COMPANY, Debtor, Defendants-Petitioners.

(No. 55716;

First District—December 29, 1972.

Robert H. Bierma, of Chicago, (Richard A. Walkovets, of counsel,) for petitioners.

Kralovec, Sweeney, Marquard & Scoby, of Chicago, (George E. Sweeney and Edward V. Scoby, of counsel,) for respondents.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

This case comes to us on a petition by defendants for leave to appeal from an order granting a new trial to two of three plaintiffs, in accordance with Supreme Court Rule 306. (Ill. Rev. Stat. 1971, ch. 110A, par. 306.) The suit was brought by Nancy Jane Boone, administratrix of the estate of Johnnie Boone, deceased, for damages for the wrongful death of her husband, and by James Bridges and Hozie Noble for personal injuries. Plaintiffs charge that as a result of the train crew's negligence, defendants' train collided with a truck occupied by plaintiffs and decedent. The case was tried and submitted to a jury which found the defendants not guilty. The jury also answered in the affirmative two special interrogatories submitting two inquiries: (1) whether adequate and reasonable warning was given of the approach of the train; and (2) whether the driver of the truck, Johnnie Boone, was guilty of contributory negligence.

The trial court denied a motion for a new trial as to the representative of Boone's estate, and that ruling has not been appealed. The court granted a new trial to plaintiffs Bridges and Noble on the grounds that the evidence did not support the verdict as to them, and that the jury may have been confused by the instructions given. We proceed to consider the propriety of the court's order granting a new trial to Bridges and Noble. The facts follow.

Boone, Bridges, and Noble were three of four professional truck drivers employed to transport materials from Arkansas to a factory located on the outskirts of Remington, Indiana. Two semi-trailers were used in the one-day trip, with Bridges and Noble driving one, and Boone and the fourth man driving the second truck. Soon after their arrival at the destination on the morning of December 11, 1963, Boone, Bridges and Noble took Boone's truck into town to buy food for lunch which they planned to eat at the factory. On the way in, Boone drove over the grade crossing where the accident was later to occur. When they returned, they went over the same crossing from a northern direction.

A rusty metal sign near the highway warned motorists of a railroad crossing, and the usual crossarms were located on either side of the track. There was no elevation or depression at the point of the crossing in the two-lane concrete road running through flat, open country. The weather was cold but basically clear, with some overcast. As the truck passed over the crossing on the return trip it was struck by defendants' train which killed Boone and injured Bridges and Noble.

At the trial, Bridges testified that because of the head injuries he received he could not remember the accident. Noble testified that he was riding in the sleeper portion of the truck and neither saw nor remembered any of the events.

At the time of the collision, defendants' train was manned by a crew of five. The engineer died prior to the trial; therefore, his version of the accident was unavailable. The fireman, R. S. McMurray, testified that he was riding on the left, or north side of the engine at the time; that it was his duty as fireman to keep a lookout on the engineer's blind side, which he was doing prior to the accident; that the train was traveling at about 40 miles an hour; and that the engineer began blowing the whistle at the post located 1500 feet before the crossing. He further testified that he did not see the plaintiffs' truck until it was 100 to 300 feet from the crossing, at which time he told the engineer to apply the emergency brakes. McMurray admitted that after the accident he had told a railroad investigator that he had been making out reports prior to the accident and did not look to view the crossing until he heard the train whistle.

Robert Harger, a brakeman, testified that he was riding in the second engine of the train in a position corresponding with McMurray's in the lead engine; that he saw plaintiffs' truck approaching when it was 1800 feet from the crossing; that he then realized a collision was imminent and tried to pull the emergency brake, but mistakenly grabbed the handle on a fire extinguisher instead. He further testified that he did not hear the engineer sound the whistle until the train was 300 to 400 feet from the crossing, and he estimated the whistle sounded for 40 to 45 seconds before the accident.

Robert Murphy, the head brakeman, testified that he was riding in the second engine with Harger, but did not remember if the train bell was rung or the whistle blown prior to the collision.

Meredith Key, the conductor, testified that the train was traveling at 40 miles an hour prior to the accident; that he felt the emergency brakes being applied before the collision; that when he alighted he found the lead engine of the train was 400 to 500 feet beyond the crossing, and that the headlight of the lead engine was on.

Richard St. Pierre and Dorothy Kiefer, employees at a factory adjacent to the crossing, testified that they heard the train whistle prior to the collision, but that instead of sounding as it normally did, the signal was a series of short, violent blasts.

■■ We proceed to a consideration of defendants' contention that the trial court abused its discretion in granting Bridges and Noble a new trial. In such a determination a trial court is vested with discretion, the exercise of which will not be disturbed on appeal in the absence of a clear abuse thereof. (*Klatt v. Commonwealth Edison Co.*, 33 Ill.2d 481.) The standard to be applied by this court in reviewing the evidence where the motion for a new trial has been granted by the trial court is whether the evidence preponderated in favor of the defendant, which is what the jury determined, or in favor of the plaintiff, which is what the trial court concluded. If the former, we reverse; if the latter, we affirm. *Skiba v. Ruby* (1969), 113 Ill.App.2d 170.

At the time of the occurrence in the instant case, two statutes were in effect in Indiana which regulated conduct at rail crossings. One requires a motorist to stop within a specified distance from a crossing when a train emits a signal at 1500 feet from such crossing and such signal is audible for such distance. (Ind. Ann. Stat. § 47—2114 (Burns Repl. 1965).) The other statute requires a train to have in operation a bell and whistle and to begin sounding both at 80 rods (1500 feet) from a crossing, continuing until the train reaches the crossing. (Ind. Ann. Stat. § 55—1243 (Burns Repl. 1951).) The failure by a carrier to comply with the provisions of this second statute is negligence *per se*. *Chicago, etc., R.R. Co.*

*v. Hix,* 91 Ind.App. 698, 173 N.E. 602; *Pennsylvania Co. v. Fertig,* 34 Ind. App. 459, 70 N.E. 834; *New York Central R. Co. v. Powell,* 221 Ind. 321, 47 N.E.2d 615.

In their complaint plaintiffs allege that defendants' servants were negligent in failing to comply with the statutory requirements as to sounding a whistle upon approaching within 1500 feet of a crossing, and in failing to keep a proper lookout upon approaching the crossing. The evidence introduced as to both of these issues was conflicting.

■■■ On the question of the first sounding of the whistle, McMurray, the fireman, testified that it was at the whistling post, located 1500 feet from the crossing, that the engineer first gave the signal. Harger, the brakeman, testified that the whistle was not sounded until the train was 300 to 400 feet from the crossing. Two nearby factory employees testified that the signal given was not the usual one, but gave no indication of the distances involved. The law is clear that where there is substantial conflict in the testimony as to whether sufficient warning was given by those operating a train, the issue is one for the jury. (*Baltimore & Ohio R.R. Co. v. Patrick, Admrx.,* 131 Ind.App. 105, 166 N.E.2d 654.) In the instant case, it is undisputed that the whistle was sounded. As to the question of where it was first sounded, the credibility of the witnesses is the decisive factor, and that was for the jury to determine. *Roth v. Lissner Iron & Metal Co.,* 88 Ill.App.2d 352.

The question of the credibility of the witnesses and the decision thereon is also in issue in plaintiffs' allegation that the train crew failed to maintain a proper lookout as the train approached the crossing. McMurray testified that he was fulfilling his duty to keep a constant lookout on the engineer's blind side, and that he did not see plaintiffs' truck until it was 100 to 300 feet from the crossing. McMurray admitted, however, that he gave a statement that he had been writing reports in the engine prior to the collision and did not look up to view the crossing until he heard the train whistle. Harger, the brakeman, testified that he was riding in a relative position as McMurray; that he saw plaintiffs' truck at a distance of 1800 feet from the crossing, and that the train whistle was not sounded until the train was 300 to 400 feet from the crossing. However, Harger also testified that the whistle sounded for 40 or 45 seconds before the collision which, in view of the undisputed testimony that the train was traveling at approximately 40 miles an hour as it neared the crossing, would place the point of the whistle's first sound at a much greater distance from the crossing than 300 to 400 feet. The credibility of the witnesses is also pivotal to the resolution of this factual issue, and the respective credibility of McMurray and Harger was for the jury to decide. *Roth v. Lissner Iron & Metal Co., supra.*

The testimony of McMurray, even considering his prior inconsistent statement, is not so unreasonable that it can be said the jury erred in crediting it and in finding that the proscribed statutory signals were given and a proper lookout maintained by the crew.

It is next argued by defendants that the trial court erred in holding that the jury may have been confused by the instructions it received from the court. The record shows no indication of which instruction or instructions were considered confusing to the jury. Plaintiffs argue that there was error in the giving of three instructions tendered by defendants. Instruction No. 2, stating that those operating a train may presume a vehicle approaching a crossing will exercise proper care for its own safety, is challenged as being an erroneous statement of Indiana law. Instruction No. 3, which stated the Indiana statute pertaining to the duties of a driver of a vehicle approaching a crossing, is challenged for the inclusion of the term "party or parties" as leading the jury to believe that the contributory negligence of a driver violating such would also bar recovery by his passengers. Plaintiffs also urge that defendant's Instruction No. 5, dealing with the right-of-way at rail crossings, together with Instructions 2 and 3, were so repetitious in nature that the cumulative effect was such as to mislead the jury in regard to the respective rights and duties of the parties.

Whatever the merits of their objections may be, it does not appear from the record that plaintiffs, at the conference on instructions and in their post-trial motion, asserted the grounds now relied upon as error. Plaintiffs were required to state their specific objections at the conference and to renew those objections in their post-trial motion, and cannot urge specific error for the first time on review. (*Saunders v. Schultz*, 20 Ill.2d 301; *Hocking v. Rehnquist*, 44 Ill.2d 196; *Greenlee v. John G. Shedd Aquarium*, 31 Ill.App.2d 402.) By their failure to make the objections now argued on review, plaintiffs waived any error in the giving of these instructions, and the trial court could not base upon them an order granting a new trial. All other instructions given were not objected to by plaintiffs.

The order granting a new trial is reversed and the cause remanded with direction to enter judgment upon the verdict.

Order reversed; cause remanded with directions.

HAYES and LEIGHTON, JJ., concur.