Elwood Redfern *et al.*, Plaintiffs-Appellants, *v.* R. H. Rosenthal, Defendant-Appellee.

No. 73-173; 

Fifth District—March 12, 1974.

Meyer & Meyer, of Greenville, for appellants.

Droste & Droste, of Mt. Olive, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal by the plaintiffs-appellants from an order of the Circuit Court of Bond County, on February 8, 1973, granting a judgment for the defendant-appellee notwithstanding the jury verdict for the plaintiffs and a new trial if the judgment notwithstanding the verdict is reversed, set aside or vacated on appeal.

The plaintiffs, husband and wife, were owners of 180 acres of farmland in Bond County and decided to sell. They contacted the defendant, a real estate broker, and the litigants entered into a contract for the sale in December 1969. Later, the plaintiffs informed the defendant that they wished to sell their personal propetry and suggested that a public sale be had for the farmland and the personal property at the same time. Arrangements, including terms, date, advertising, etc., were made between the litigants for a public auction for real estate and personal property.

On March 4, 1970, a public auction was conducted on the property of the plaintiffs with the personal property being sold in the morning and the real estate being offered in the afternoon. The high bid of $48,000 for the farm was brought to the plaintiffs at the close of the auction and Mrs. Redfern stated they could not accept that price, and later Mr. Redfern also testified that he could not accept that figure. Mr. Redfern indicated that they would take nothing less than $54,000. Mr. Ahring, a prospective buyer, made the $48,000 offer at the auction through the defendant and came into the plaintiffs' home with the defendant after the auction ended. The conversation consisted of Mr. Ahring attempting to make a tentative offer for his son, who was not present, and a firm statement from the plaintiffs that they would not accept any price under $54,000 for the land. There was further talk about the need of Ahring's son to sell his farm before he could buy the plaintiffs' ground. At any rate, the day ended with no money being deposited, and an understanding that Ahring's son would come and look at the farm again, which he did. Part of the property was finally sold by the plaintiffs in May 1971 and the remainder in October 1971 to other persons.

The plaintiffs claimed damages in the sum of $10,000 in that they expended monies for the auctioneer's service, advertising expenses, and

real estate commission. They further claimed that they spent sums of money in selling their property themselves and also became obligated to expend money for taxes, interest and maintenance on their land. The plaintiffs finally asserted that these expenses were all incurred as a result of the defendant's failure to fulfill his side of the contract.

Upon the evidence to the jury, a verdict was returned for the plaintiffs in money damages. The trial judge differed with the verdict of the jury and entered his order accordingly.

The plaintiffs advance two points in their appeal:

(1) The trial judge was in error in granting to the defendant a judgment notwithstanding the verdict.

(2) The trial judge was in error in granting to defendant a new trial, if the judgment notwithstanding the verdict is reversed, set aside, or vacated on appeal.

Obviously, the original contract was amended so that an auction took place on March 4, 1970, and it came to a conclusion with the high offer of $48,000 being turned down by the plaintiffs. The plaintiffs cannot sustain their position in this lawsuit when they claim that defendant breached his contract by not selling the property at public auction. The plaintiffs closed the auction when it was apparent that $48,000 was less than what they wanted to receive for the sale of the land, and this was the high bid. This is shown in the cross-examination of plaintiff, Mr. Redfern. The plaintiffs paid the auctioneer 2 percent ($960) of the $48,000, the high bid, and also paid the defendant $209.14 for advertising expenses for the auction, these payments being made the afternoon of March 4, 1970. The defendant completed his part of the arrangement in conducting the auction, and any subsequent dealings with the Ahrings had nothing to do with the auction. There was absolutely no firm arrangement on the 20 percent to be paid by the Ahrings on the day of the sale. The plaintiffs are talking about 20 percent of $54,000, which Ahring said could not be paid until certain conditions could be met by his son. All this took place after the auction was completed. This figure of 20 percent came about as being a condition listed in the circular describing the terms of the sale of real estate at the auction. Obviously, there was no meeting of the minds between the Redfern family and the Ahrings at any time so as to consummate the sale of the land at the auction, immediately following the auction, or at the meetings in the days after March 4, 1970.

■■ The jury's verdict in this case was contrary to the preponderance of the evidence and the judge clearly did not abuse his discretion in entering a judgment for the defendant notwithstanding the verdict.

In *Skiba v. Ruby*, 113 Ill.App.2d 170, 173, the court stated:

"It is the trial court's duty to set aside a verdict if it is not sustained by the greater weight of evidence."

The testimony and the evidence at the trial clearly did not support the jury's verdict. The plaintiffs' testimony on direct and cross-examination was to the fact that they wanted a public sale and an auction. They and the defendant, when he was called under section 60 of the Civil Practice Act, supported this. The evidence was conclusive that the auction was completed when the plaintiffs turned down the high bid of $48,000 and proceeded to pay the agreed expenses without an objection. The defendant was not indebted to the plaintiffs under the agreement of the auction, even though he attempted to have Ahring purchase the farm for $54,000.

■■ We must then turn to the rules as set down in *Pedrick v. Peoria and Eastern*, 37 Ill.2d 494, 510, which is cited by counsel for both sides:

"In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■ ■ Under these rules the trial judge did not abuse his discretion. The position of the defendant was clearly fortified by the witnesses for the plaintiffs and the defense, and the trial judge had no alternative but to "take away" the verdict from the jury.

The action of the Circuit Court of Bond County in entering judgment notwithstanding the verdict is affirmed.

EBERSPACHER and CREBS, JJ., concur.