RODNEY K. BRENDEL, Plaintiff and Counterdefendant-Appellee, *v.*
ROBERT A. HUSTAVA *et al.*, Defendants.—(ROBERT A. HUSTAVA, Defendant-
Appellant; BRENT SIMON, Defendant and Counterplaintiff-Appellee.)

Fifth District    No. 80-156

Opinion filed June 25, 1981.

Walker & Williams, P. C., of Belleville (Dale L. Bode, of counsel), for appellant.

Freeark, Harvey & Mendillo, P. C., of Belleville (James R. Mendillo, of counsel), for appellee Rodney K. Brendel.

Chapman and Carlson, of Granite City (Robert W. Bosslet, Jr., of counsel), for appellee Brent Simon.

Mr. JUSTICE JONES delivered the opinion of the court:

This case is before our court by virtue of our order granting leave to appeal from an order of the circuit court granting a new trial. The case resulted from an automobile collision which occurred during the early morning hours of April 16, 1978. Rodney Brendel was the owner and driver of one of the cars involved. Brent Simon was the owner, and he and Robert A. Hustava were the occupants, of the second car involved. It was disputed as to whether Simon or Hustava was the driver of the second car.

The action was commenced when Brendel as plaintiff filed a complaint naming both Simon and Hustava as defendants. Simon later filed a counterclaim against Brendel.

Following an initial mistrial, a jury trial was commenced on Brendel's third amended complaint (complaint), and Simon's counterclaim. The complaint alleged that Brendel was operating his vehicle in a proper manner when it was struck by Simon's car and that the accident was the direct and proximate cause of severe injuries to Brendel. The complaint alleged:

> "At the time and place aforesaid, defendant, Brent Simon, either individually or by and through his agent, defendant, Robert A. Hustava, or Robert A. Hustava, individually, or both, were operating or in physical control of a motor vehicle * * * and they did so negligently and carelessly operate said motor vehicle as to cause it to strike, hit and collide with the vehicle which the plaintiff was operating."

The counterclaim of Simon alleged that Simon was operating his vehicle in a proper manner and that Brendel's negligent driving caused the accident which resulted in injuries to Simon and the destruction of his car.

At trial, Brendel testified that he could not tell who was driving the Simon vehicle at the time of the accident but that moments after the accident he saw Simon, who was already out of the car, walk from the

passenger side of his (Simon's) car to the driver's side, which is where Hustava was located. This testimony was corroborated by plaintiff's occurrence witnesses, Ralph Griffin and Spencer Deleen. Neither Griffin nor Deleen had actually seen the collision, but both of them heard the crash and were at the scene within a short time. Each testified to seeing Hustava slumped behind the wheel of the Simon car.

Also called as a witness for Brendel was Doyle Creek, the police officer who had investigated the accident. Creek stated that when he arrived he found Hustava at the wheel of the Simon automobile, and Simon on the passenger side of the vehicle. According to Creek, Hustava, while he was in the emergency room of the hospital following the collision, admitted to being the driver of the Simon vehicle. Creek testified that on the basis of that admission and his observation of the accident scene, he later took Hustava to the police station where he issued him a citation. Also according to Creek, Hustava never denied having been the driver of the Simon vehicle. A copy of Hustava's subsequent conviction for improper lane usage was introduced into evidence. However, the jury was informed only that as a result of the accident Hustava had been convicted of a "traffic offense." They were not told the precise offense of which Hustava had been convicted.

In addition to evidence concerning his diminished earning capacity, Brendel also introduced the expert testimony of Dr. Guillermo Rodriguez, an orthopedic surgeon who treated him when he was taken to the hospital emergency room shortly after the accident. Dr. Rodriguez testified that Brendel had received a broken leg and injured knee, and extensive therapy and treatment had been required. Dr. Rodriguez predicted a complete but slow recovery. On cross-examination by Hustava's attorney, Dr. Rodriguez was asked questions and gave answers which tended to connect the injuries received by the occupants of the Simon car with a position as either driver or passenger. Brendel's attorney made two objections during the series of questions, one objection was that the line of questions was beyond the scope of direct examination (overruled), and the other, imposed a few questions later, was the general objection, "I object to that" (sustained). The jury was instructed to disregard the question, although the witness had never answered.

Upon redirect examination the attorney for Brendel returned to the same area of examination, asked the following question of Dr. Rodriguez, and received the following answer:

"Q. Now, Mr. Bode asked you about a passenger not getting a rib injury or chest injury. It is possible a passenger can receive a chest or rib injury, isn't it?

A. Nothing is impossible, but in that way—I say what I have been saying is the percentage of trauma in different positions in a

car is usually to the passenger. Hurt his lower extremities, dislocate the pelvis and more trauma and face because most of the time they go under the dashboard or they go forward to the windshield. The driver, he goes through the—he have more—be able to be hit in the chest, abdomen and face and extremities, but in that way, that is the percentage, but if you go in a car and it roll over and turn, I cannot say that he was hit in that position in this place."

In contrast to the evidence introduced by Brendel, which sought to establish Hustava as the driver of the second car, both Hustava and Simon testified unequivocally that Simon had been driving at the time of the collision. Simon stated that although he was driving at the time he could not remember the events leading up to the accident. Simon remembered that immediately after the accident he checked the passenger seat to see if Hustava was all right and that after getting Hustava conscious he had Hustava crawl over to the driver's seat in order to get him out of the car because the passenger's door of his car had previously been inoperative. Simon related that before he could get Hustava out, Hustava passed out again, at which point Simon began screaming at Brendel for running into him. Simon did not remember exactly what was said when police arrived on the scene, but he did not believe they ever asked him who was driving his car. Simon stated that he did not become aware that Hustava had been taken to the police station and ticketed until several days later. Simon testified that he had received a broken thumb and four broken ribs and had lacerations and bruises on his knees, but he did not suffer an injury to his head.

Hustava's version of the events corroborated the testimony given by Simon. Hustava stated that prior to the accident the passenger door had been inoperative, so he crawled over from the passenger's seat to the driver's seat, which is where he was sitting when police came to the scene. Hustava denied having told police officers that he was the driver of the Simon vehicle and said he was somewhat surprised when he was ticketed for the collision. Hustava testified that he accepted the ticket without objection because he knew that Simon's driver's license might be revoked if he got another ticket. According to Hustava, Simon never asked him to take the blame and he stayed silent in traffic court and accepted the fine merely because he wanted to get that matter over with. Hustava also stated that he had not been seriously injured, suffering only facial lacerations when his head hit the windshield on the passenger's side of the vehicle.

Hustava also presented the expert testimony of Dr. Pothen Jacob, the hospital emergency room physician who treated Hustava and Simon. Dr. Jacob confirmed that Hustava had suffered only facial lacerations from broken glass, whereas Simon had suffered a broken thumb, four broken

ribs and bruises and lacerations on his knees. On direct examination he was permitted to give answers to a series of questions which tended to connect injuries received by occupants of an auto involved in a collision with placement as either driver or passenger. There were repeated objections by attorney Mendillo (representing Brendel as a counter-defendant), but they were overruled. Following direct, Dr. Jacob was subjected to sharp cross-examination in which he stated that it was entirely possible that in a collision an auto passenger could receive broken ribs while the driver would not.

During closing argument Brendel's attorney made it plain to the jury that Brendel wanted to impose liability upon Hustava, rather than Simon, because only Hustava had insurance. The argument of Brendel's attorney included the following, verbatim:

"If there is a judgment rendered against him [Simon], he could file bankruptcy * * *.

* * *

You will have to decide how much that either or both of the defendants should respond in damages to Mr. Brendel and the point I am trying to make is, he is entitled to them; that Mr. Simon is not going to be personally hurt if there is a judgment rendered against him and they are trying to protect, for some reason, Mr. Hustava's insurance.

Now, who put these young men up to this? Maybe you could speculate. There is an inference here. Somebody did. Somebody said, 'Hustava, you go in and say Simon was the driver.' It could be that the insurance company—.

* * *

The insurance lawyers didn't have anything corrected. They just let everybody believe Hustava is the driver and then come in here and the only reason they could suggest is to have Simon being the driver is to defeat the claim of Mr. Brendel; to see if he gets a judgment against Simon only. He is not going to get any money; he is not going to be able to pay these bills and he is still not going to get his lost wages."

Hustava's motions for a mistrial following these statements were denied and the case went to the jury for decision. The jury returned a verdict which awarded: (1) $25,000 to Brendel on his claim against Simon; (2) found for Hustava and against Brendel on Brendel's claim against Hustava; and (3) found for Brendel on Simon's counterclaim against Brendel.

Following the jury verdict and consideration of post-trial motions, the trial court entered an order which granted a new trial: (1) to Brendel on his claims against both Hustava and Simon and (2) to Simon on his

counterclaim against Brendel. The principal basis for the granting of a new trial was that the court had erred in allowing the testimony of Dr. Jacob which connected injuries received by occupants of an auto involved in a collision as consistent with a position as either driver or passenger, and in refusing to strike the same, because a proper foundation had not been laid for such testimony. The court's order also recited, without explanation or illustration, that the verdict was against the manifest weight of the evidence. Because of the interrelationship of the claims, a new trial was ordered for Simon on his counterclaim against Brendel.

We granted Hustava leave to appeal the order granting the plaintiff-counterdefendant Brendel a new trial as to Hustava and as to Simon. (73 Ill. 2d R. 306.) Pursuant to Supreme Court Rule 306(a)(2) (73 Ill. 2d R. 306(a)(2)), "[A]ll rulings of the trial court on the post-trial motions are before the reviewing court without the necessity of a cross-appeal." Therefore we also consider the propriety of the trial court's granting a new trial to Simon on his counterclaim against Brendel.

We initially consider the contention of Hustava that the challenge to the testimony of Dr. Jacob was not preserved by an objection made at trial. Brendel was represented by two attorneys at trial. Attorney Godfrey represented Brendel in his role as plaintiff, and attorney Mendillo represented him in his role as counterdefendant. When Doctors Rodriguez and Jacob testified as to the type of injuries that would normally be sustained by a driver, as opposed to a passenger, only attorney Mendillo objected. It is Hustava's position that since only Mendillo objected, Brendel never objected in his role as plaintiff, but only in his role as counterdefendant. Even if we accept this dichotomy, we note that attorney Godfrey (representing Brendel in his role as plaintiff) did cite the admission of medical testimony as error in his post-trial motion. Therefore this case is distinguishable from *Boone v. Baker* (1972), 9 Ill. App. 3d 509, 292 N.E.2d 461, which defendant Hustava cites. In *Boone* trial counsel failed to object both at the time of the alleged error and in the post-trial motion.

■■ Furthermore, on the facts of this case we cannot accept the dichotomy which Hustava proposes. It is true that one co-defendant may not take advantage of the objection made by counsel for a co-defendant. (*Martino v. Barra* (1973), 10 Ill. App. 3d 97, 293 N.E.2d 745, citing with approval *Allegretti v. Murphy-Miles Oil Co.* (1935), 280 Ill. App. 378.) However, we do not believe the case at bar to represent an analogous situation, for we are concerned with two attorneys representing separate interests of one party. We have found no authority on point. Where different attorneys represent a single individual or entity in different capacities, the only way they could satisfactorily represent their client would be through mutual cooperation, at least where, as here, the same or similar issues are involved. Under such circumstances it would be placing

form over substance to require both attorneys to object in order to preserve the rights of their single client.

■■ Testimony by Dr. Jacob, which coupled injuries received by Simon and Hustava with their positions as, respectively, driver and passenger of the car occupied by them, form the basis of Brendel's argument in his motion for new trial and in this appeal. The contention is that, since there was a dispute at trial as to whether Simon or Hustava was the driver of the second car, expert-witness testimony from the doctor which coupled injuries received with a position as either driver or passenger was erroneously admitted because the doctor was not shown to be qualified to express such an opinion. The result was that prejudicial evidence was considered by the jury on the question of whether Simon or Hustava was the driver of the second car.

Consideration of Brendel's argument regarding the objected-to testimony of Dr. Jacob leads us to conclude that the trial court acted improperly in using such testimony as a partial basis for a new trial.

■■ Dr. Rodriguez previously in the same trial had given similar testimony. Although an objection had been made it was not directed to the point now raised and accordingly is unavailing to preserve any claimed error. (*Bosel v. Marriott Corp.* (1978), 65 Ill. App. 3d 649, 382 N.E.2d 587; *People v. Goble* (1976), 41 Ill. App. 3d 491, 354 N.E.2d 108; 2 Ill. L. & Prac. *Appeal and Error* §258 (1953).) Not only was the Rodriguez testimony given without objection, but in cross-examination Brendel's attorney pursued the matter further and elicited clear testimony of the very nature now relied upon as error. Accordingly, Brendel has waived any right to claim error because of the same type of testimony given by Dr. Jacob. Not only that, the Jacob testimony was, at most, cumulative.

■■ Although we need not so decide, we believe it was a proper exercise of discretion for the court to permit the objected-to testimony of the doctors in the first instance. Their hospital emergency room and orthopedic experience would indicate at least threshold expertise to connect certain injuries suffered by automobile crash victims with a particular location in the automobile. Common sense would indicate that the driver of an automobile involved in a collision would be the occupant most likely of all passengers to suffer a chest injury since it is the driver who sits behind and in close proximity to the steering wheel and steering column. As we stated in *Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 516, 388 N.E.2d 844, 846:

> "A trial judge possesses a wide area of discretion in allowing expert testimony which he feels will aid in the understanding of the issues in a particular case. (*Iverson v. Iverson* (1977), 56 Ill. App. 3d 297, 370 N.E.2d 1135.) The testimony of an expert must be judged by the same rules of weight and credibility which are applied to

other witnesses. The weight and value of his testimony largely depends upon the foundation of fact and reason which forms the basis of his opinion. *Peet v. Dolese & Shepard Co.* (1963), 41 Ill. App. 2d 358, 369, 190 N.E.2d 613.

In the instant case, the fact that expert Ayres received his knowledge more from experience than study is of little import. 'The knowledge required may be obtained from study, experience or both.' (*Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill. App. 3d 907, 323 N.E.2d 418.) A witness whose knowledge is based upon practical experience is no less an expert than one who possesses particular academic or scientific knowledge. Their respective effect on the triers of fact is one of degree only. (*Dauksch v. Chamness* (1973), 11 Ill. App. 3d 346, 352, 296 N.E.2d 592.) There is insufficient basis for distinction between them, and it is for the jury to determine the weight to be given their testimony. *Arnold v. Carpenter* (1967), 83 Ill. App. 2d 343, 346, 227 N.E.2d 543."

Also, this case is very similar to our previous case of *Dobkowski v. Lowe's, Inc.* (1974), 20 Ill. App. 3d 275, 314 N.E.2d 623. *Dobkowski* involved a wrongful death action arising from an automobile accident. There a police officer, over objection, gave an opinion as to the point of impact. His opinion was based merely upon personal observation of physical evidence, which was readily understandable by the average juror. Although the testimony there was unnecessary, we ruled its admission to be harmless error since, on the basis of the physical evidence presented, the jury could have reached no other conclusion.

In this case a similar result is warranted. The undisputed evidence concerning damage to the steering wheel and to the passenger's side of the windshield could well lead to the conclusion that the rib and knee injuries sustained by Simon indicate that he was the driver, and the facial lacerations sutained by Hustava indicate he was the passenger, just as Simon and Hustava both testified.

In conclusion upon the testimony of the doctors as to the position of the defendants with relation to their injuries, we would make the observation that the parties and the trial court have made too much of it. One of the doctors testified that the only way he would know which injured passenger had been driving was if he were told, and the other doctor testified that any occupant of an auto involved in a collision, regardless of the seat occupied, could receive injuries of the kind suffered by both Hustava and Simon. Thus, any impact that this particular testimony might have made was largely, if not entirely, neutralized.

■■ ■ The jury's verdict here was both reasonable and based upon the evidence; and as we have recognized many times:

"[T]he jury's verdict should not be disturbed by the trial court

unless it is 'unreasonable, arbitrary, and unsupported by the evidence.' *Scoggins v. Village of Hartford*, 128 Ill. App. 2d 228, 262 N.E.2d 97 (1970); *Buer v. Hamilton*, 48 Ill. App. 2d 171, 199 N.E.2d 256 (1964) [citations]." (*Stringer v. McHugh* (1975), 31 Ill. App. 3d 720, 722, 334 N.E.2d 311, 312.)

Although a trial court has broad discretion in the granting of new trials, "[n]either the trial court nor the appellate court should sit as a second jury * * * [and] [g]ranting a new trial merely because the trial court would have reached a different result, where there is evidence which if believed would support the jury's verdict, is an abuse of discretion." *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 271, 362 N.E.2d 446, 454; accord, *Deaver v. Hickox* (1970), 121 Ill. App. 2d 465, 256 N.E.2d 866; *Roth v. Lissner Iron & Metal Co.* (1976), 88 Ill. App. 3d 352, 232 N.E.2d 534.

On the facts of this case the jury's verdict was amply supported by evidence, and neither Brendel nor Simon can properly argue that their right to a fair trial was prejudiced by an erroneous admission of medical testimony. If anything, the prejudicial references to Hustava's insurance allowed Brendel and Simon each to receive more than a fair trial, and it cast Hustava in the role of the one prejudiced. The remarks of plaintiff Brendel's attorney to the effect that only Hustava had insurance coverage and Simon had none were both highly improper and highly prejudicial, suggesting that the jury find only against Hustava. Nevertheless, in a commendable display of fidelity, the jury heeded the admonition given by jury instruction to decide the case according to the facts as they determined them from the evidence, and not to be swayed by sympathy, prejudice or argument.

Although the trial court also made a finding in its order granting a new trial that the verdict was against the manifest weight of the evidence, we think it obvious that this finding was nothing more than a perfunctory and stylized recital. Both Simon and Hustava testified under oath at the trial that Simon had been driving his own auto at the time of the collision, and they fully explained previous statements to the contrary. The physical facts attending the collision presented a classic case for resolution by a jury, and there is nothing whatsoever to justify a court in overturning the jury's verdict.

For these reasons it was an abuse of discretion to grant new trials to Brendel and Simon, and we reverse the order of the trial court which granted a new trial to Brendel on his complaint, and a new trial to Simon on his counterclaim, and render judgment here on the jury verdict.

Reversed. Judgment rendered on jury verdict.

KASSERMAN, P. J., and WELCH, J., concur.