### NATIONAL, UNION FIRE INS. CO. v. WALLACE.

#### No. 8639.

Court of Civil Appeals of Texas. Austin.

May 18, 1938.

610

Callaway & Callaway, of Brownwood, for appellant.

Critz & Woodward, of Coleman, for appellee.

BLAIR, Justice.

Appellant, National Fire Insurance Company, sued appellee, W. E. Wallace, alleging that it issued a policy of collision insurance covering a truck owned by Vernon F. Lewis; that while the policy was in force a head-on collision occurred between the truck and an automobile trailer of appellee; that appellant paid Lewis $436.56 in settlement of his claim under the policy for damages to the truck, and that Lewis by written contract assigned and subrogated to appellant all his right, interest, or cause of action against Wallace growing out of the collision; and for which amount appellant brought this suit.

As ground of recovery appellant alleged that appellee negligently and carelessly failed to securely fasten the trailer to his automobile, and that said negligence caused the trailer to come loose from the automobile, swerve across the road to the left, and to run head-on into the approaching truck of Lewis, wrecking both the trailer and the truck. A trial to the court without a jury resulted in judgment for appellee; hence this appeal.

By its proposition appellant contends that the overwhelming preponderance of the evidence showed that appellee Wallace was negligent in failing to securely fasten or hitch his trailer to his automobile. We do not sustain the contention. There is no dispute with regard to the collision. The undisputed evidence showed that the trailer came loose from the automobile just as the automobile and truck were approaching each other from opposite directions, the trailer swerving to the left in front of the truck and causing damage thereto. The evidence showed that the trailer was attached to the automobile by two pieces of iron, one on the upper side and the other on the lower side at the end of the tongue. Each of the plates had a hole in it; another iron plate was attached to the rear bumper of the automobile, and it had a hole through it. The plate on the rear of the bumper was placed between the two plates on the end of the tongue, and an iron pin dropped through the holes of the three iron plates; and at the bottom of the iron pin was a hole through which a wire was run as a key to hold it in position. The trailer weighed about eleven hundred pounds, and was empty, and had been pulled by the automobile about three and a half miles when it became detached. At the time it became detached the automobile drawing it was proceeding at from twenty-five to thirty miles an hour on a paved road,

and the truck was approaching at about the same speed, each on its respective side of the road. No cause was shown as to why the pin came out of the clevis which fastened the trailer to the automobile. According to the witnesses, the wire on one side of the pin had been sheared off, and on the other side had been bent down so that the pin slipped through the holes in the iron plates. The evidence showed that such was the usual manner of fastening trailers; and no witness had heard of a trailer coming detached where the wire or key had been placed in the bottom of the pin underneath the iron plates hitching the trailer. The person who placed the wire in the pin and attached the trailer to the automobile, showed that he was experienced in the matter, having been engaged for several years in detaching such trailers from cotton wagons at the gin where he was employed; and he testified that the entire fastening apparatus was the same or similar to most of such trailers; and that more than 50% of them were attached by simply dropping the pin through the holes in the iron plates and placing a wire through the end of the pin below the plates; that a few had taps on the end of the pin, and that others had no key and were not fastened at the bottom of the plates, but were simply dropped through the holes in the plates, with the head of the pin resting on top of the plates; that from 75 to 90% of the cotton was brought to the gin in such trailers; and that during several years' experience he never heard of one coming loose as did the one in question. Several other witnesses who were familiar with the fastening apparatus of trailers similar to the one in question, testified that the manner in which the trailer was attached in the instant case was the usual and ordinary manner of attaching such trailer; that they knew of no reason why it should have become detached, and they never heard of a trailer becoming detached in the manner that the one did in the instant case; that it was just simply one of those things that occurred; that the fastening or hitch apparatus in the instant case, as made and attached with the wire through the bottom of the pin and twisted around so as not to permit it to work out, was in accordance with the method adopted by most trailer users. In such situation the trial court was clearly authorized to find that the trailer did not become detached from the automobile because of any

negligent or careless act of appellee. It had been fastened or hitched in accordance with the manner in which ordinarily prudent persons similarly situated hitched their trailers to their automobiles; and from the evidence the court could have found that the trailer became unfastened or unhitched from the automobile as the result of an unavoidable accident, and that the collision occurred as the result of an unavoidable accident.

The doctrine of res ipsa loquitur has no application in the instant case because appellant alleged three specific acts of negligence upon which it based its cause of action: (1) that appellee was operating the automobile pulling the trailer at a dangerous and unlawful rate of speed, to-wit, 45 miles per hour; (2) that he failed to keep a proper lookout; and (3) that he negligently and carelessly failed to securely fasten or hitch the trailer to his automobile, which negligence caused it to come loose, swerve to the left across the road where it collided head-on with Lewis' truck causing the damages complained of.

The rule is res ipsa loquitur has no application where specific acts of negligence are relied upon for recovery. Rankin v. Nash-Texas Co., Tex.Com.App., 105 S.W.2d 195; Texas & N. O. Ry. Co. v. Beard, Tex.Civ.App., 91 S.W.2d 1080, writ ref.; Hawthorne v. Texas & N. O. Ry. Co., Tex.Civ.App., 84 S.W.2d 1015. There was no evidence offered on the first two acts of negligence alleged; and on the issue of negligence in failing to securely fasten or hitch the trailer to the automobile the above detailed evidence fully sustained a finding that appellee used the diligence required of an ordinarily prudent person in fastening or hitching the trailer to his automobile, and that the collision was the result of an unavoidable accident.

But appellant contends that the doctrine of res ipsa loquitur is applicable under the the rule stated in Southland Greyhound Lines v. Frausto, Tex.Civ.App., 69 S.W. 2d 497, as follows (page 499):

" 'Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explana-

**612**

tion by defendant, that the accident arose from want of care.' McCray v. Galveston, H. & S. A. R. Co., 89 Tex. 168, 34 S.W. 95."

■■ If it be assumed that this rule of res ipsa loquitur is applicable to the facts of the instant case, then appellee fully met the burden cast upon him by the rule. His witnesses showed that the trailer was fastened or hitched to the automobile in accordance with the method or manner generally used by trailer operators, which method or manner had been proved by experience and usage of trailer operators to be safe and efficient. The doctrine of res ipsa loquitur is not a rule of substantive law, but is a rule of evidence. Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659. Appellee met every burden of the rule when he showed that in fastening the trailer to the automobile he used every precaution that an ordinarily prudent person would have used under the same or similar circumstances.

■■ By a bill of exception, which was never presented to counsel for appellee, the trial judge recites in substance that at the conclusion of the evidence he made the statement from the bench that he believed and found that appellee, Wallace, was negligent in causing the collision between the trailer and the truck, in not seeing that said trailer was securely fastened to the automobile; but further believed that the truck had been paid for, and therefore concluded that appellant had no cause of action. Under Rule 53 of district and county courts, no bill of exception shall be taken to a judgment of the court rendered upon matters which at common law constitute the record proper in the case, such as the citation, petition, answer, motion for new trial, arrest of judgment, and final judgment. There is nothing in the statement of facts nor the judgment indicating that the trial judge found appellee negligent in the manner of attaching his trailer to his automobile. No request was made for findings of fact and conclusions of law by the trial judge. He cannot by such a bill of exception make a finding of fact and conclusion of law which is contrary to the judgment roll upon which the judgment was rendered. Willis v. Graf, Tex.Civ.App., 257 S.W. 664; King-Collie Co. v. Wichita Falls Warehouse Co., Tex.Civ.App., 205 S.W. 748. The bill of exception was not presented to counsel for appellee before it was filed, giving him an opportunity to examine and contest same; it will therefore not be considered. Pfeuffer v. Haas, Tex.Civ. App., 55 S.W.2d 111.

Our above conclusions render unnecessary a decision on the issue of whether appellee, Wallace, paid Lewis all the damages done to his truck. Suffice it to say, however, that Wallace paid Lewis $100 as damages. Several witnesses, automobile and truck dealers, testified that the reasonable market value of the truck immediately before the collision was from $200 to $350. It had been run about 70,000 miles, and from 90,000 to 100,000 miles was considered the life of such a truck. Immediately after the collision Lewis put it in on a new truck for the sum of $231, which added to the $100 paid him by appellee showed that he received more than the estimated value of the truck.

The judgment of the trial court will be affirmed.

Affirmed.