DENNIS TODD LOOFT, Plaintiff-Appellee, *v.* MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellant.

Fifth District   No. 80-615

Opinion filed February 19, 1982.

Walker and Williams, of Belleville (John B. Gunn and James C. Cook, of counsel), for appellant.

Randolph E. Schum, of Paul L. Pratt, P. C., of East Alton, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

The basic issue presented by this appeal is whether plaintiff's motion for a new trial on the issue of damages only was properly granted by the circuit court of Madison County. Plaintiff's suit was under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1976)) for injuries he allegedly suffered during his employment by defendant. A jury returned a general verdict of $37,500 for plaintiff, and the trial court subsequently granted plaintiff's motion for a new trial on the issue of damages only. This court granted defendant's petition for leave to appeal under Supreme Court Rule 306 (73 Ill. 2d R. 306).

The incident giving rise to plaintiff's suit took place on October 25, 1977, shortly after plaintiff's 22d birthday and one month after plaintiff went to work on one of defendant's maintenance of way crews. Among the machines used by the crew was a "spike puller," which removed spikes from the track. It had a motor and a hydraulic system but was not self-propelled. At the end of each day's work, plaintiff and other crew members removed the spike puller from the track. This operation was also performed whenever a train passed through. Removal was accomplished as follows: Two rubber-tired wheels located on one side of the machine were let down and locked in place. Crew members would then lift the other side of the machine and roll it off the track in wheelbarrow fashion. Plaintiff testified that he hurt his back during such a lift. It is uncontradicted that he promptly reported the injury and helped prepare an accident report.

Donald Wyatt, then a maintenance crew foreman, testified that the spike puller probably weighed 700 to 800 pounds, but could have been nearly 1200 pounds. Other witnesses gave estimates between these extremes. There was testimony that moving the machine off the track was commonly considered a job for four or five men; however, two witnesses

testified that two men could perform the task and another professed to have done it alone. Plaintiff testified that two other men were lifting with him at the time of his injury.

Testimony at trial was contradictory with respect to several significant facts. It would serve no purpose to set forth all of the testimony relating to disputed facts. It will suffice to note that there was substantial disagreement on the following points: (1) whether one of the rubber-tired wheels was defective and could not be placed in proper position for ease of removal of the spike puller from the track; (2) whether the spike puller was equipped with pull-out handles for ease of such removal; (3) whether, at the time of hiring, plaintiff received a railroad safety rule pamphlet; (4) whether plaintiff's crew foreman followed the practice of reading to the crew each morning a safety rule for the day, there being uncontradicted testimony that this was an industry-wide practice; and (5) whether a small crane used in plaintiff's crew, known as a tie handler, could have been used to remove the spike puller from the track.

It was shown that the above mentioned safety manual included instructions for lifting heavy machinery, requiring that the men be placed according to size, strength, and experience and that one person give the command for all to lift at once. Plaintiff's testimony that no one instructed him as to how to lift the spike puller is uncontradicted.

According to plaintiff, immediately after the injury, his lower back was both sore and numb and his right leg was sore from his hip to his knee. He related that he was treated 13 times by a chiropractor, the first time on the day after the injury. He first consulted Dr. George Schoedinger, an orthopedic surgeon, in early 1978. Plaintiff was admitted to a hospital in August 1978 for extensive tests. According to Dr. Schoedinger, plaintiff ultimately stated that he could not live with the problems in his back and legs, and Dr. Schoedinger performed a laminectomy in September 1978, disclosing a bulging disk in the lumbar spine. Dr. Schoedinger testified that while post-operative recovery had been excellent, plaintiff had suffered permanent disability. Dr. Schoedinger related that he had instructed plaintiff to avoid heavy lifting, bending, pushing, pulling, twisting, and tortional motion of the back, but had imposed no specific weight lifting limitation. On cross-examination by defendant, Dr. Schoedinger noted that some other post-laminectomy patients of his had returned to railroad maintenance of way work.

Plaintiff testified that after the injury he was placed on "light duty." Plaintiff related that he was fired within six months of the day he was hired. In this regard, various witnesses testified that during the first six months, new employees were on "probation" and could be fired without reason. According to plaintiff, a house-painting job he held prior to consulting Dr. Schoedinger aggravated his back condition. He stated that

after surgery, he could not find work until June 1980, but that in May 1980 an employer offered him work, then reconsidered, apparently because of his injury. Plaintiff then found work with a municipal utility service. He testified that he had problems on that job with bending, standing, and sitting on the truck. Also, he had experienced much difficulty on the sole occasion he had tried hunting and found it necessary to give up bowling and football altogether.

On cross-examination of plaintiff, defendant elicited that plaintiff had had numerous brief jobs after high school and prior to working for defendant. He had also been unemployed for periods of months during that time.

A neurologist testified for defendant that he had examined plaintiff three months prior to trial. While this witness noted the laminectomy scar, he found no objective evidence of disability. In his experience, post-laminectomy patients were frequently instructed to limit their lifting, *e.g.*, to 35 pounds or less.

Plaintiff's complaint originally sought $300,000 damages, an amount later amended to $500,000. Proof of damages was as follows: Plaintiff itemized out-of-pocket medical expenses, which totaled $4,700.72. Dr. Louis Grossman, professor of economics at St. Louis University, testified for plaintiff, estimating that plaintiff's lost wages to date as a result of the injury were $37,209 and that the present value of plaintiff's future lost wages was between $267,801 and $424,707, all figures after taxes. In such estimate, Dr. Grossman assumed that plaintiff would work the rest of his life at the minimum wage, that if not for the injury plaintiff would have continued in his maintenance of way job for defendant until retirement, that plaintiff would retire at an age between 59.62 and 65 years, and that wages would rise at a rate of between six and eight percent over that period of time. A claims agent for defendant testified that of 100 to 125 maintenance of way employees presently working for defendant, 10 to 12 were over age 40 and only one was over age 50. He estimated that the turnover rate on those crews was 50%. Donald Wyatt, one of plaintiff's foremen at the time of the injury, testified that that crew was laid off in December of 1977, at which time employees with seniority "bumped in" on other jobs and younger workers were out of work.

Following the jury's return of a general verdict of $37,500, plaintiff moved for a new trial as to damages only or, in the alternative, a new trial on all issues. In allowing the motion for new trial as to damages only, the trial court, in a written order, cited "the manifest inadequacy of the jury award in view of the plaintiff's injuries. In addition the jury may have been confused by the giving of defendant's instruction No. 7, particularly in view of the fact that the plaintiff proved net rather than gross income. * * * "

Defendant's instruction No. 7, a non-pattern instruction, read as follows:

"In reaching your verdict, you will not increase the amount of your verdict by reason of federal or state income taxes, since the amount awarded to plaintiff is not taxable income to plaintiff within the meaning of these tax laws."

On appeal, defendant contends that: (1) the trial court could not order a new trial without expressly finding that the verdict was unreasonable, arbitrary, and unsupported by the evidence; (2) the verdict was supported by the evidence; and (3) a trial restricted to the issue of damages would be unfair to defendant. The view we take of this case requires that we consider only the second issue raised.

■■■ This court will not reverse an order granting a new trial absent an affirmative showing of a clear abuse of discretion on the part of the trial court. Further, when the evidence supports the jury's verdict and there is no showing that a party was denied a fair trial, it is an abuse of discretion for the trial court to substitute its judgment for that of the jury. (*Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825; see *Kolakowski v. Voris* (1981), 94 Ill. App. 3d 404, 418 N.E.2d 1003.) This court has often recognized that the jury's verdict should not be disturbed by the trial court unless it is "unreasonable, arbitrary, and unsupported by the evidence." (*Stringer v. McHugh* (1975), 31 Ill. App. 3d 720, 722, 334 N.E.2d 311, 312; *Brendel v. Hustava* (1981), 97 Ill. App. 3d 792, 799-800, 423 N.E.2d 503, 509.) As stated by this court in *Brendel v. Hustava*:

"Although a trial court has broad discretion in the granting of new trials, '[n]either the trial court nor the appellate court should sit as a second jury * * * [and] [g]ranting a new trial merely because the trial court would have reached a different result, where there is evidence which if believed would support the jury's verdict, is an abuse of discretion.' [Citations.]" 97 Ill. App. 3d 792, 800, 423 N.E.2d 503, 509.

■■ In the case at bar, we find the verdict of the jury amply supported by the evidence. Contributory negligence was at issue in this case. (45 U.S.C. §53 (1976).) As defendant has aptly argued here, the jury could have determined that plaintiff's damages were $300,000 but that plaintiff was about 90% contributorily negligent. Further, there was substantial ground for disagreement with plaintiff's expert's estimates of present and future lost wages. Plaintiff was a probationary employee who could have been, and was, fired while on probation. His work record prior to the injury was not steady. It was shown that maintenance crews were subject to layoffs and high turnover and that few older employees worked on these crews. There was also room for disagreement as to the extent of plaintiff's injury, since defendant's medical expert found no objective evidence of dis-

ability and plaintiff's attending surgeon acknowledged that some post-laminectomy patients returned to maintenance of way work. We conclude that the instant verdict was neither unreasonable, nor arbitrary, nor unsupported by the evidence adduced.

Nevertheless, we must consider whether the trial court could properly have determined that the trial was not fair to plaintiff. (*Bradley v. Caterpillar Tractor Co.*) Plaintiff calls our attention to three alleged improprieties which we now consider.

First, the trial court found that the jury "may have" been confused by defendant's instruction No. 7, above quoted. This was the only trial error referred to by the trial court in its order setting aside the verdict. However, the giving of this instruction in FELA cases has expressly been approved in *Oltersdorf v. Chesapeake & Ohio R.R. Co.* (1980), 83 Ill. App. 3d 457, 404 N.E.2d 320, *cert. denied* (1981), 450 U.S. 920, 67 L. Ed. 2d 347, 101 S. Ct. 1367, and *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755. Further, we disagree with plaintiff's contention that this instruction served no purpose in view of Dr. Grossman's estimates of lost wages in after-tax dollars. Absent the instruction complained of, Dr. Grossman's references to income taxes may have confused the jury because they had no way of knowing whether their award would be taxable or not. As stated by the United States Supreme Court in *Liepelt*, this instruction "would not be prejudicial to either party, but would merely eliminate an area of doubt or speculation that might have an improper impact on the computation of the amount of damages." (444 U.S. 490, 498, 62 L. Ed. 2d 689, 696, 100 S. Ct. 755, 760.) This was a neutral instruction and could not have adversely affected the fairness of the trial.

■■ Second, we consider whether the following comment by attorney Gunn, counsel for defendant, was grounds for a new trial:

"MR. GUNN: Your honor, at this point, the Missouri Pacific would be glad to transport this jury to the point where any of these spike pullers are—

MR. SCHUM: Your honor, I'm going to object—

MR. GUNN:—so they can have a view of the spike pullers if that is the problem in the case.

THE COURT: Well—

MR. SCHUM: I would object to that, your Honor, and ask the—

THE COURT: That objection is sustained.

MR. SCHUM:—jury be instructed—

THE COURT: The jury is instructed to disregard it.

\* \* \*"

Except in condemnation cases, facts gained in a viewing cannot be considered in evidence (*Lancer Industries, Inc. v. City of Aurora* (1975),

30 Ill. App. 3d 962, 333 N.E.2d 653; *Chicago, B. & Q. R. R. Co. v. Burton* (1892), 53 Ill. App. 69), and defendant's attorney should not have insinuated that a viewing could be had. Whether such conduct was grounds for a new trial was largely within the discretion of the trial court. (*Paul v. Garman* (1941), 310 Ill. App. 447, 34 N.E.2d 884.) However, improper conduct of counsel may be harmless (*Park District of Highland Park v. Becker* (1965), 60 Ill. App. 2d 463, 208 N.E.2d 621), particularly where, as here, objection was promptly made and sustained. (*People v. Sawyer* (1969), 42 Ill. 2d 294, 251 N.E.2d 230, *cert. denied* (1969), 396 U.S. 928, 24 L. Ed. 2d 225, 90 S. Ct. 262.) We are not requested to overrule the trial court's determination that this comment was not harmless. To the contrary, the trial court's written order granting plaintiff's post-trial motion makes no reference to this comment, this despite plaintiff having conspicuously mentioned it twice in his post-trial motion. It is apparent that the trial court, as we do, believed that comment to have been without significant effect.

Finally, plaintiff contends on appeal that the trial court's order granting a new trial as to damages only should be affirmed because of defense counsel's several references to the spike puller having a lift-weight specification of 180 pounds, an assertion not supported by proof. Since the statements were not based on the evidence, they should not have been made. We find the matter inconsequential and note not only that the trial court failed to refer to the matter in its written order granting the post-trial motion, but also that plaintiff recognized its lack of significance and did not mention it in his post-trial motion.

■■ In conclusion, we find no errors or misconduct at trial such as would affect the fairness of the trial. Since we have also concluded that the verdict was supported by the evidence, we determine that the trial court's granting of a new trial was an abuse of discretion; therefore, that order is vacated. This cause is reversed and, pursuant to our authority under Supreme Court Rule 366(a)(5) (73 Ill. 2d R. 366(a)(5)), judgment is entered on the verdict of the jury in favor of plaintiff and against defendant for $37,500, plus costs.

Reversed.

KARNS, P. J., and JONES, J., concur.