458 So.2d 182 (1984)
Raymond HUMPHREY
v.
Carson J. GAUTHREAUX, et al.
No. 83-CA-792.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1984.
*183 Leon C. Vial, III, Hahnville, for plaintiff-appellant.
Carmelite M. Bertaut, Hammett, Leake & Hammett, New Orleans, for defendant-appellee.
Before KLIEBERT, BOWES and GRISBAUM, JJ.
KLIEBERT, Judge.
The plaintiff, Raymond Humphrey, sued Carson J. Gauthreaux and his liability insurance carrier, Canadian Universal Insurance Company, for damages arising out of an automobile collision which occurred on the Airline Highway in St. Charles Parish on December 2, 1980. After a trial before the judge, Gauthreaux was found to be the cause of the accident and Gauthreaux and his insurance carrier were cast in judgment for $25,000.00 together with an unspecified amount for reimbursed medical expenses incurred by the plaintiff.
The plaintiff devolutively appealed urging inadequacy of the award because: (1) the trial judge failed to make an award for the loss of wages and (2) the general damage award of $25,000.00 by the trial judge was insufficient. The defendant, Gauthreaux also filed a devolutive appeal grounded in the contention he was never served and never made an appearance in the case. For the reasons hereinafter stated, we affirm the judgment as to the insurance carrier and, as to Gauthreaux, we reverse.
At the time of the injury, plaintiff was 47 years of age and employed as a second class pumper at GATX in Good Hope, La., earning $9.50 per hour. After the accident of December 2, 1980, plaintiff did not return to work until January 7, 1981. He was also absent from work between February 4, 1981 and August 24th, 1981.
With respect to the loss of wages, in his reason for judgment, the trial court said: "Recovery for wages lost should be based on that proven in court. I find that the plaintiff has failed to carry that burden."
The record shows the plaintiff consulted Dr. Myles Gaupp the day following the accident. Although Dr. Gaupp did not appear as a witness, the record contains statements furnished by him to GATX[1] stating the plaintiff was unable to work December 2, 3 and 4, 1980 and that as of December 4, 1980, the plaintiff "may not *184 return to work until December 10, 1980." Also, there is a report dated January 2, 1981 stating plaintiff could return to work on January 7, 1981.
Thus, although there is evidence from which the trial judge could have concluded the plaintiff did not report to work between December 2, 1980 and January 7, 1981, the plaintiff failed to prove on what days he would have been scheduled to work in that time period.
Although the plaintiff introduced evidence to show on what days he was out of work and the amount of wages lost during the period February 4, 1981 to August 24, 1981, he failed to show that the cause of his absence from work during that time frame was the accident of December 2, 1980. Although the memorandum dated August 10, 1981 from Dr. Richard Levy (the treating orthopedic surgeon) states that the plaintiff was capable of returning to work on August 24, 1981, there is nothing in the record to indicate Dr. Levy considered him unable to work during the period February 4, 1981 to August 24, 1981 because of the injury sustained in the accident. On the other hand, the memorandum from Dr. Ray Lousteau (the treating physician for the non-accident illness) specifically shows that the plaintiff was unable to work because of the non-accident illness during this time period.
Hence, we cannot say the trial judge erred in concluding the plaintiff failed to carry his burden of proof as to damages for lost wages.
We next consider the general damage award of $25,000.00.
Dr. Russel Levy, an orthopedic surgeon whose testimony was introduced by deposition, was the only physician who testified in the case. He had surgically removed a mass from plaintiff's wrist in July 1980 and his partner had treated the plaintiff for a back injury some four years prior to the accident here in question. His initial examination subsequent to the December 2, 1980 accident was on January 29, 1981. Dr. Levy related the plaintiff's history as of that date as follows:
"At that time, he stated fairly briefly that he was injured again in the area of the back in an auto accident. This time, he had apparently been treated at Dr. Gaupp's office and had been working with the back because, as he put it, he had to work. He stated that he was having the same problem he had had four years ago when he was injured at work with back and leg pain and some numbness. He said he was doing all right on the treatment Dr. Gaupp was giving him with heat treatment and muscle relaxants and pain medication; but at work, he had begun climbing tanks again which was generally in his job and his leg had begun going numb on him and his back had been hurting him more."
The doctor stated his initial physical examination revealed no spasm, but he did find stiffness and restricted motion in plaintiff's back. Without benefit of x-rays, he diagnosed plaintiff as having a low back sprain with some nerve root impairment. He believed the plaintiff could continue working provided he used a back support.
After the initial examination, the plaintiff did not return to Dr. Levy's office until March 5, 1981. At that time, he informed Dr. Levy he had been hospitalized and had had surgery for cancer of the larynx. In view of this and the plaintiff's continued complaint of pain, Dr. Levy elected to have a bone scan done to rule out a metastatic cancer of the back as the cause of the pain. The bone scan was negative.
X-rays of the back showed mild spurring of the vertebrae at L4-L5. Dr. Levy considered the spurring of little significance because it was consistent with the plaintiff's age and work history. Due to plaintiff's throat operation, Dr. Levy had difficulty understanding the plaintiff; hence, he continued to treat him conservatively until his next appointment on March 30, 1981.
At the March 30, 1981 examination, Dr. Levy found plaintiff's back condition had worsened. He was having more pain in his right leg (previously pain had been in the *185 left leg) and had a type of "drop foot" (a weakness in the peroneal musculature) which made it difficult to bring the foot in the dorsiflexion. After this examination, Dr. Levy diagnosed the cause of plaintiff's complaints as "lumbar degenerative disc disease with some nerve root impingement." He believed, however, that the problem would correct itself without surgical intervention; hence, he did not schedule a myelogram or recommend surgery. Instead, he continued conservative treatment.
Subsequent examinations reflected plaintiff continued improving to the point Dr. Levy felt full recovery had been obtained and signed a statement saying the plaintiff could return to work on August 24, 1981.
Appellate review of the award of a trial court as to excessiveness or inadequacy must be based on the particular facts and circumstances of the case. The award may only be modified on appeal if the facts reveal that the trial court abused its much discretion in awarding damages. C.C. Article 1934(3); Reck v. Stevens, 373 So.2d 498 (La.1979). Under the circumstances involved here, we cannot say the trial judge abused his discretion.
We now consider the defendant, Carson Gauthreaux's appeal. The record shows Gauthreaux was never personally served nor did he make a general appearance. The mere presence of the defendant in the courtroom does not constitute a general appearance. Thibodeaux v. Thibodeaux, 355 So.2d 275 (4th Cir.1978) Likewise, an appeal in which the defendant only seeks relief on the grounds that the trial court did not have jurisdiction does not constitute a general appearance under La. C.C.P. 7. DLJ of Louisiana $1 v. Green Thumb, Inc., 334 So.2d 801 (3rd Cir.1976). Thus, the judgment rendered against Carson Gauthreaux is null. La.C.C.P. Article 1201.
Accordingly, we reverse the trial court judgment insofar as it cast Carson J. Gauthreaux, and affirm the trial court in all other respects. Each party to bear his own cost of the appeal.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] These statements were part of GATX's personnel record and were introduced in globo through the Assistant Office Manager at GATX.