471 So.2d 295 (1985)
Secnola FOAB Wife of, and Paul Grant
v.
NEW ORLEANS PUBLIC SERVICE INC., and the City of New Orleans.
No. CA-2910.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1985.
*296 George E. Escher, Katner & Escher, New Orleans, for appellant.
Salvador Anzelmo, City Atty., Douglas P. Wilson, Chief Deputy City Atty., Harold D. Marchand Asst. City Atty., New Orleans, for defendants-appellees.
Before CIACCIO and BYRNES, JJ., and PRESTON H. HUFFT, J. Pro Tem.
BYRNES, Judge.
This is an appeal from a judgment denying the claim of appellant, Mrs. Secnola Foab Grant for damages against the City of New Orleans. We affirm. The facts of the case are as follows:
On July 7, 1980, Mrs. Grant injured her back when she stepped off a NOPSI bus into a hole in the neutral ground. She sued both NOPSI and the City, alleging that the City was strictly liable for the unreasonably dangerous condition presented by the hole in its neutral ground. The claim against NOPSI was based on allegations that NOPSI breached its duty to Mrs. Grant as a fare paying passenger, to take reasonable steps to insure that she reached her destination safely.
A bifurcated trial was held because a jury was requested and the City was a defendant. The jury decided the case against NOPSI and awarded Mrs. Grant $40,000.00. The judge ruled that the City was not liable because:
There is no evidence to show that the City of New Orleans approved of the use of the neutral ground for a Bus Stop, nor had any knowledge that the neutral ground was being used as such. There is no evidence to show that the City of New Orleans knew of the defect in the neutral ground.
Mrs. Grant has appealed the dismissal of the City and the denial of her motions for New Trial and Additur. We have reviewed the record, and agree with the trial judge that the City is not liable for Mrs. Grant's injuries.
No evidence was presented at trial showing that the City knew or approved of NOPSI's use of the neutral ground as a bus stop, nor was there evidence that the *297 City knew or should have known of the existence of the hole. Under these circumstances, the trial judge was correct in not finding the City liable under a negligence theory.
In order to establish a strict liability claim against the City, Mrs. Grant had the burden of proving that a thing in the custody and control of the City had a vice or defect which presented an unreasonable risk of harm, and that her injury was caused by the vice or defect. Entrevia v. Hood, 427 So.2d 1146 (La.1983). One of the defenses to strick liability is that the injury was caused by a third person. Loescher v. Parr, 324 So.2d 441 (La.1975). We have concluded that this defense applies to the facts of this case.
The uncontradicted testimony of Ms. Shirley Mischler established that NOPSI had actual notice of the existence and location of the hole for at least six months before Mrs. Grant's injury, and was aware of at least two other incidents where passengers had stepped off the bus into this same hole. Having received actual notice that it was not safe to discharge passengers at this particular location, it was negligent for NOPSI to continue using it.
NOPSI's breach of that duty was, in our opinion, the sole legal cause of Mrs. Grant's injury. If not for NOPSI's negligence, Mrs. Grant would not have been exposed to the risk which the hole presented. This is not a case where a passenger encounters a defect several steps after exiting a bus. The evidence in this case leaves no doubt that Mrs. Grant's first step off the bus was into the hole. NOPSI knew the hole was there. The only reason this particular accident occurred was that NOPSI negligently placed Mrs. Grant in a position where it was virtually inevitable that she would step in the hole. The legal cause of Mrs. Grant's injury was not the defect in the neutral ground, but the negligence of NOPSI in knowingly exposing her to that defect. This third party fault relieves the City of any liability to Mrs. Grant which might have arisen as a result of the hole in the neutral ground. See C.C. Art. 2317.
Mrs. Grant also complains that the trial judge's charge misled the jury into believing that the judge would grant her additional damages from the City. We do not agree. The judge instructed the jury as follows:
As I told you before, this was a trial with two defendants. You heard no arguments from the attorney for the City. You are to pay no attention to that issue.
Your sole function here is to make a determination as to New Orleans Public Service and the plaintiff. That's all. You are not to concern yourself with whether the City is or is not liable, whether they should or should not pay anything at all, and just take it as if the City was not even in this case. That's a matter I'm going to take up because that's what the law charges me with, and I will take care of that and dovetail it with anything that happens in this jury case.
The questions you're going to decide is, "Was New Orleans Public Service negligent? Was this negligence a proximate cause of the accident?" If the answer to both of those is yes, you will then answer number three, which is, "What amount of damages did the plaintiff suffer as a proximate cause of this accident? What damages did this accident cause the plaintiff in the event that you find Public Service is negligent and that that negligence was a proximate cause of her injury?"
Given these instructions we do not believe that the jury's award was based on the belief that the judge would grant additional recovery from the City.
Finally, Mrs. Grant appeals the denial of her motion for additur, arguing that the $40,000.00 awarded by the jury was inadequate to compensate her for her losses. Dr. Elmorshidy, Mrs. Grants' treating physician, diagnosed her condition as chronic strain of the lumbo sacral spine and lumbar disc syndrome of the L-5, S-1 disc. *298 He felt that Mrs. Grant suffered a five to ten percent permanent disability of the whole body as a result of her injuries. These findings were contested by experts for the defense who contended that Mrs. Grant's condition resolved itself soon after the accident, and that some of her complaints had been psychogenic. There was further testimony that Mrs. Grant had not worked steadily for several years and that her inability to secure work was due at least in part to her psychological problems, which predated this incident. This cast doubt on the validity and extent of her claim for past and future lost wages. Even the medical bills were contested as including charges not related to this accident. Under these circumstances we cannot say that the jury abused its great discretion by fixing damages at $40,000.00.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.