Linford **WARNER**, Plaintiff,

v.

Clayton **LAWRENCE** and Charley's Trucking, Inc., Defendants.

Civ. No. 88–31.

District Court, Virgin Islands, St. Thomas and St. John Divisions.

Jan. 16, 1991.

Law Offices of Maria T. Hodge, P.C. by Denise Francois, St. Thomas, V.I., for plaintiff.

Law Offices of Wilfredo A. Geigel by Wilfredo A. Geigel, and Verdina Y. Showell, Gallows Bay, Christiansted, St. Croix, V.I., for defendants.

## OPINION

ROBERT L. CARTER, District Judge, sitting by designation.

On November 18, 1986, plaintiff Linford Warner was injured in an accident outside the warehouse of his employer, L & S Holding, Inc. (more commonly known as "Little Switzerland"), at the docks of the West Indies Company in St. Thomas. At the time of the accident, plaintiff was taking inventory of the contents of a van owned by Little Switzerland, which was parked behind a trailer owned by a third person not a party to this lawsuit. In response to a call from Little Switzerland, defendant Charley's Trucking, Inc. dispatched defendant Clayton Laurent,[1] a truck driver employed by Charley's Trucking, to pick up the trailer. When Laurent backed the cab of his truck up to the trailer, the trailer rolled backward and struck the plaintiff and/or the van where he was working. As a result, the plaintiff allegedly suffered back injuries, including herniated intervertebral discs.

Plaintiff subsequently brought this action against the defendants, claiming that his injuries were a result of Laurent's failure to conform to the required standard of care. The claim against Charley's Trucking is based on the doctrine of respondeat superior. After discovery, the case came on for trial before the court and a jury on October 15 and 16, 1990. The jury returned a special verdict, together with a general verdict for the plaintiff in the amount of $278,000. Of this amount, $3,000 represented "[d]amages covering the period up to today," and $275,000 represented "[d]amages which will be incurred in the future." Judgment was entered on the verdict.

Defendants now move for "judgment notwithstanding the verdict and/or for a new trial or in the alternative for a remittitur." Plaintiff has not responded to the motion. A transcript of the trial has not yet been prepared, and so I must rely on my recollection of the proceedings, with the help of the court reporter.

## DISCUSSION

### I. Motion for Judgment Notwithstanding the Verdict

The standard for judgment notwithstanding the verdict is the same as that for a directed verdict. *Smollett v. Skayting Dev. Corp.*, 793 F.2d 547, 548 (3d Cir.1986). On a motion for judgment n.o.v., the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.

---

1. Laurent's name has consistently been misspelled as "Lawrence" in the caption of this action.

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990). The motion must be granted only if, "as a matter of law, the record [does not contain] the 'minimum quantum of evidence from which a jury might reasonably afford relief.'" *Smollett, supra*, 793 F.2d at 548 (quoting *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir. 1969)).

■ Defendants contend that plaintiff failed to produce evidence sufficient to allow the jury to conclude that defendants violated the applicable standard of conduct. Under Virgin Islands law, "the chauffeur of a truck" is under a duty "at all times [to] exercise the greatest degree of care and caution," 20 V.I.C. § 502, and the jury was instructed accordingly. To find the defendants liable, the jury did not need to find that Laurent was negligent in the ordinary sense—that is, that he failed to exercise the care that would be exercised by a reasonably prudent person in the same circumstances—but only that he failed to conform to the higher standard of care required of truck drivers.

The defendants cite cases holding that a finder of fact cannot, or need not, infer ordinary negligence merely from the fact that a trailer became detached while on the highway. *Horwitz v. Sulham*, 342 Mass. 327, 173 N.E.2d 247 (1961) (reversing judgment for plaintiff); *Davis v. Gatewood*, 299 S.W.2d 504 (Mo.1957) (same); *National Union Fire Ins. Co. v. Wallace*, 118 S.W.2d 609 (Tex.Ct.Civ.App.1938) (affirming judgment for defendant). The present case, however, involves not only an unexplained failure of the trailer brakes but also an omission on the part of the truck driver. The undisputed testimony at trial shows that Laurent did not get out of his truck and look to make sure that no one was behind the trailer. In addition, assuming that the jury believed the testimony of the plaintiff and his supervisor, Moses Allen, and disbelieved that portion of Laurent's testimony that contradicted it, it could have concluded that Laurent (1) should have known that warehouse employees were likely to be at work near the front of the warehouse, (2) was unable to see the area behind the trailer from the cab of his truck, (3) did not sound his horn and (4) could have prevented the accident by taking further steps—such as sounding the horn or getting out of the cab—to make sure that nobody was behind the trailer. On this record, the jury could reasonably have found that Laurent's conduct was inconsistent with "the greatest degree of care and caution."

■ Defendants also contend that plaintiff failed to prove by a preponderance of the evidence that the conduct of the defendants was the proximate cause of the plaintiffs' injuries. Perhaps it is possible that the plaintiff's injuries were caused by something unrelated, such as lifting weights, and thus it is not certain beyond all doubt that the truck accident caused plaintiff's injury. Nonetheless, defendants have not established as a matter of law that a reasonable jury could not find that the truck accident was, more probably than not, a proximate cause of plaintiff's injury. Indeed, the defendants' theories as to the cause of the plaintiff's injuries amount to little more than speculation. The testimony of the plaintiff, together with the testimony of his mother and the expert witnesses called by him, affords an ample basis for the jury to conclude that his injury proximately resulted from the accident at the Little Switzerland warehouse.

Thus, the quantum of evidence from which the jury could find for the plaintiff is present. The defendants' motion for judgment n.o.v. must be denied.

## II. Motion for a New Trial

The standard for a new trial, though less rigorous than that for a judgment n.o.v., is also quite strict: "Courts will not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Lewis v. Kepple*, 185 F.Supp. 884, 887 (W.D.Pa.1960), *aff'd on op. below*, 287 F.2d 409 (3d Cir.1961); *see* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2803 at 32 (1973). The court must "disregard any error or defect in the proceed-

ing which does not affect the substantial rights of the parties." Rule 61, F.R.Civ.P.[2]

## A. Weight of the Evidence

■ A new trial may be granted if the verdict is against the weight of the evidence. *See, e.g., Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 88–90 (3d Cir.) (en banc), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). The power to order a new trial on these grounds, however, is sparingly exercised, and a verdict may not be set aside merely because the judge would have reached a different result if he were the finder of fact. *See id.* Respect for the function of the jury, as dictated by the Seventh Amendment, requires the court to "abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice." 6A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 59.08[5] at 59–150, 59–152 (2d ed. 1989), *quoted with approval in Lind, supra,* 278 F.2d at 89. Unless "the jury ... fails properly to perform the functions confided to it by law," the court must let the verdict stand, lest "the judge ... usurp the prime function of the jury as the trier of facts." *Lind, supra,* 278 F.2d at 90; *see, e.g., EEOC v. Delaware Dep't of Health & Social Servs.,* 865 F.2d 1408, 1413 (3d Cir. 1989).

■ As discussed above in connection with the motion for judgment n.o.v., it is undisputed that Laurent did not take the few seconds needed to get out of the cab of his truck and check that nobody was behind the trailer, and it is doubtful whether he sounded his horn. There is a clear and likely connection between the accident and plaintiff's back injuries; the other theories as to the cause of the injury are little more than speculation. Considering all the evidence introduced at trial, the court concludes that the jury's verdict as to liability was not against the weight of the evidence.

## B. Questioning of Witnesses by the Court

■ Defendants object that the court asked defendants' expert witnesses, Dr. Charles Payne and Dr. George Straschnov, whether and how much they had been paid to appear in court, without having asked similar questions of plaintiff's expert, Dr. Jeffrey Thomas. Defendants' Memo. at 9–10. The fact that the court did not interrogate plaintiff's expert about compensation is no indication of bias. Rather, it simply did not occur to the court to ask the question until defendants' first expert was on the stand. Moreover, the testimony of defendants' experts prior to the court's asking them about compensation suggested that they were hired solely in contemplation of litigation. By contrast, plaintiff's expert had also provided medical care to plaintiff at one time, and he read from a diagnosis by Dr. C. Thomas Carty, who had treated the plaintiff extensively. For these reasons, the question of compensation was more salient with respect to defendants' experts.

Although it is entirely proper for the court to interrogate witnesses, *see* Rule 614(b), F.R.Evid., it is not the court's duty to ask them every question that might be relevant. There is nothing improper about questioning expert witnesses concerning their compensation. Defendants' counsel was perfectly free to make such inquiries of the plaintiff's expert himself, but he chose not to do so.

The authority of the court to interrogate witnesses "is, of course, abused when the judge abandons his proper role and assumes that of advocate." Advisory Committee's Note to Rule 614(b), F.R.Evid. It is absurd to suggest, however, that the court assumes the position of an advocate whenever it does not ask the witnesses called by the plaintiff the same questions that it asks the witnesses called by the defendants. In this case, the court's questions were fair, brief, narrowly focused and

---

2. The Federal Rules of Civil Procedure and the Federal Rules of Evidence are made applicable to this court by 48 U.S.C. § 1614(b). The Sev-

enth Amendment to the United States Constitution is applicable in the Virgin Islands by virtue of 48 U.S.C. § 1561 and 5 V.I.C. § 321.

unaccompanied by any suggestions that the court favored one side over the other.

The information elicited by the court from the defendants' experts was no more compromising to the defendants than if it had been elicited by plaintiff's counsel. Defendants offer no basis for their assertion that "the jury may have inferred that the Court knew that plaintiff's expert was not being paid for his testimony." Defendants' Memo. at 10. Rather, the payment or nonpayment of the plaintiff's expert was simply not in evidence. The jury was clearly instructed to "consider only the evidence in the case," Instructions to the Jury at 3; *see also id.* at 2, which was defined for them as "the sworn testimony of the witnesses, and the exhibits and stipulations admitted in the record." *Id.* at 2. The court sees no reason to believe that the questions asked by the court prejudiced the jury so as to cause them to disregard these instructions and draw unwarranted inferences.

The principal case on which the defendants rely, *American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321 (3d Cir.1985), is quite different from the present case. In the *American Home Assurance* case, the trial judge, in his instructions to the jury, expressed the view that the expert witnesses were not credible because they most likely had been paid for their testimony, although the fact that they had been paid had not been introduced in the record. *Id.* at 326–27. The Court of Appeals vacated the judgment and remanded the case for a new trial because the trial judge had instructed the jury to consider facts that were not in evidence and had improperly suggested to the jury that the credibility of a witness who is paid a sizeable contingent fee—and thus has an interest in the outcome of the litigation—is similar to that of a witness who has received a fixed fee in an unknown amount. Nothing said by the court in the present case is even remotely similar to the court's statements held to be improper in *American Home Assurance.*

Another case cited by the defendants, *United States v. Allied Stevedoring Corp.*, 241 F.2d 925 (2d Cir.), *cert. denied,* 353 U.S. 984, 77 S.Ct. 1282, 1 L.Ed.2d 1143 (1957), illustrates how distant this case is from a situation in which the court's statements are truly prejudicial so as to warrant a new trial. In *Allied Stevedoring,* a criminal case, the trial judge had commented in the presence of the jury that "the heavy tread of false swearing is stalking through the record," and then admonished the jury that this comment was not to affect its judgment. *Id.* at 934. The Court of Appeals for the Second Circuit found that "[i]t would be absurd to reverse the conviction on this ground," because the mere expression by the judge of his personal opinion of the credibility of the witnesses, without any suggestion that the opinion "has the backing, however vague, of legal authority," is not reversible error. *Id.* In the instant case, the court did not express or imply any opinion about the credibility of any of the witnesses, much less suggest that its opinion was backed by legal authority.[3]

### C. Court's Responses to Defense Counsel's Objections at Trial

■ Defendants also argue that they were prejudiced because, "[d]espite requests by defendants' counsel for sidebar, the Court repeatedly made rulings, in the presence and hearing of the jury, on objections which were overwhelming [*sic* ] unfavorable to the defendants." Defendants' Memo. at 10. The court is under no obligation to grant counsel's requests for sidebar conferences. Indeed, the interest in avoiding interruptions and delays in the trial militates against granting such requests routinely. If the court's rulings were "overwhelmingly unfavorable" to the defendants, it is only because the objections made by defendants' counsel were without merit. If defendants' counsel had not wanted the jury to hear the court's rulings, he could have refrained from mak-

---

**3.** The remaining case cited by the defendants is not relevant. *See McGlothan v. Pennsylvania R. Co.,* 170 F.2d 121, 125 (3d Cir.1948) (ordering a new trial because the jury instructions included a misleading summary of the testimony).

ing so many groundless and cumulative objections.

Defendants also object that "the Court gave preemptory [*sic*] commands to defendants' counsel such as 'sit down, I don't won't [*sic*] hear anymore.'" *Id.* If the court did in fact say something to that effect, it is only because defendants' attorney persisted in delaying the trial, distracting the jury and trying the court's patience by rearguing points and renewing objections on which the court had already ruled, despite the court's repeated assurances that the attorney had preserved his objections for the record. Had the plaintiff's counsel conducted her case in the same manner, the court would have admonished her in the same way. Again, if the defendants' attorney did not want the jury to hear the court's admonitions, he should have accepted the court's rulings and obeyed the court's instructions for him to proceed with his case.

The case relied on by the defendants is a far cry from the circumstances of the present case. In *Cromling v. Pittsburgh & Lake Erie Railroad,* 327 F.2d 142, 149–52 (3d Cir.1963), the trial judge read a statute to the jury for no apparent purpose and in a manner likely to belittle counsel by suggesting his ignorance of the law. In response to valid objections, the trial judge in *Cromling* told counsel to sit down and said: "Oh, you have objected to half a dozen things. Don't worry about this one." *Id.* at 151. In the present case, however, the court made no remarks tending to belittle defendants' counsel, nor did it ignore any meritorious objections. Rather, defendants' counsel provoked the court's admonitions by his repeated failure to respect the court's rulings and to respond to more gentle guidance from the bench. Under the circumstances, the court's remarks were not intemperate or unduly harsh.[4]

### D. Exclusion of Evidence

■ Defendants also assert that they are entitled to a new trial because the court restricted their examination of the witnesses with respect to possible causes of a herniated disc other than the truck accident. The questions excluded by the court, however, lacked any foundation and called for speculation by the witnesses. The court admitted testimony—including testimony by the plaintiff's own expert—indicating that a herniated disc could be caused by lifting heavy weights, which the plaintiff had been accustomed to doing. The sweeping questions asked by the defense counsel, however, such as "What else can cause a herniated disc?" and "Can sneezing cause a herniated disc?" are immaterial, absent some connection between the testimony being sought and the particular condition or activities of the plaintiff. Moreover, further testimony on the possibility that a herniated disc could be caused by lifting weights would have been needlessly cumulative and a waste of time. Accordingly, the questioning was properly disallowed. *See* Rules 401–403, F.R.Evid.

■ Defendants also object that the court excluded evidence that they had attached tractor-trailers in the same manner many times previously without incident. Again, this evidence is immaterial. The pertinent standard of conduct is an objective standard of "the greatest degree of care and caution" and does not depend on the past conduct of the defendants. If the defendants could have prevented the accident by being more cautious, then they were not exercising "the greatest degree of care and caution," and the absence of prior accidents is simply irrelevant. Moreover, it would be impossible or at least unduly time-consuming to establish why no prior accidents occurred and how the circumstances of the prior tractor-trailer hookups were similar or different from those in this case in regard to visibility and other relevant factors. The absence of prior accidents, if admitted in evidence to show that the defendants' behavior was safe, would therefore be highly misleading.

*See Chicago, R.I. & P.R.R. v. Speth,* 404 F.2d 291 (8th Cir.1968). It is therefore not pertinent to this case.

---

**4.** The other case cited by the defendants concerns impermissible communications between the court and the jury after the jury has retired.

### E. Juror Impartiality

■ Defendants contend that, after the verdict was returned, they learned that Juror Number 8, Una Mueller, had been the principal of Peace High School during the period in which plaintiff attended that school. When the court asked the potential jurors on voir dire whether anyone knew any of the parties, Mueller did not state that she knew the plaintiff. Defendants argue that Mueller's alleged concealment raises a presumption of bias and prejudice.

The fact that plaintiff was a former student at a school where Mueller was principal, however, does not imply that she knew the plaintiff at the time of trial. Defendants offer no reason to believe that, of all the students who may have gone to the school where Mueller was principal, she would have remembered the plaintiff. Even if she knew who he was, she might not have been directly acquainted with him. The court has no reason to believe that Mueller's response at voir dire—that she did not know the plaintiff—was not true, and defendants have supplied none. Thus, on this record, there was not even an unintentional concealment.

Moreover, the very cases cited by the defendants hold that an unintentional concealment by a juror is not grounds for disqualification without a showing that the juror was biased. *See Williams v. Barnes Hosp.*, 736 S.W.2d 33, 37 (Mo.1987) (en banc); *Barnes v. State*, 263 Ind. 320, 330 N.E.2d 743, 746–47 (1975); *cf. First of Ga. Ins. Co. v. Worthington*, 165 Ga.App. 303, 299 S.E.2d 567, 572–73 (1983) (new trial ordered when juror lied deliberately). Contrary to the defendants' suggestion, the size of the jury's award of damages is no indication of bias. There is absolutely no reason to believe that Mueller deliberately concealed material information or that she was prejudiced in favor of the plaintiff or against the defendants. Thus, the fact that she did not disclose that she had been the principal at plaintiff's high school affords no basis for granting a new trial.

### F. Excessive Damages

■ The court has the power to grant a new trial on the issue of damages, conditioned on plaintiff's refusal to file a remittitur (that is, a reduction in the amount of the award), if the size of the verdict is "so grossly excessive that it is not rationally related to any evidence adduced at trial." *Brown v. McBro Planning & Dev. Co.*, 660 F.Supp. 1333, 1337 (D.V.I.1987) (Brotman, J.); *cf. Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 772 (3d Cir.1987); *David v. Pueblo Supermarket*, 740 F.2d 230, 239 (3d Cir.1984). The court may not grant a conditional new trial on this basis unless the damages are "so unreasonable as to offend the conscience of the court." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir.1989) (internal quotation marks omitted); *see Couch v. St. Croix Marine, Inc.*, 667 F.Supp. 223, 226 (D.V.I. 1987) (O'Brien, J.).

The cases cited by the defendants [5] are of little help in determining whether the jury's award is excessive for an injury of this type, because each of those cases involves a plaintiff's contention that the damages were less than the minimum amount that a reasonable jury could award. In this case, however, the defendants challenge the verdict as excessive, and so it is the maximum, not the minimum, reasonable verdict that is of concern to the court. The jury retains "very broad discretion in measuring damages," *Gumbs, supra*, 823 F.2d at 771, and if the court grants a remittitur, it may reduce the verdict only to the maximum amount that a jury reasonably could have found. *See Couch, supra*, 667 F.Supp. at 226; *cf. Gumbs, supra*, 823 F.2d at 774.

The *Gumbs* case, *supra*, provides a useful benchmark for determining whether the

---

**5.** *Hill v. Lamulle,* 506 So.2d 690 (La.Ct.App. 1987); *McGrew v. Jordan,* 516 So.2d 1246 (La. Ct.App.1987); *Pomije v. Scheiber,* 371 N.W.2d 596 (Minn.Ct.App.1985); *Humphrey v. Gauthreaux,* 458 So.2d 182 (La.Ct.App.1984); *Looft v. Missouri P.R.R.,* 104 Ill.App.3d 152, 60 Ill.Dec. 253, 432 N.E.2d 1152 (1982); *Vial v. Armstrong,* 479 So.2d 583 (La.Ct.App.1985), *cert. denied,* 481 So.2d 635 (La.1986); *Foab v. New Orleans Public Serv., Inc.,* 471 So.2d 295 (La.Ct.App.), *cert. denied,* 475 So.2d 362 (La.1985); *Carson v. Witty,* 471 So.2d 1003 (La.Ct.App.1985).

damages awarded in this case were excessive. Celia Gumbs, the plaintiff in that case, had suffered a back injury involving herniated discs as the result of a slip and fall. Gumbs' injury did not require hospitalization or surgery and did not cause her to lose any time from work. *Gumbs, supra,* 823 F.2d at 775. She was able to climb the twenty-five steps to her accounting office daily. *Id.* Before her accident, Gumbs had suffered from preexisting back problems. *Id.* On the other hand, Gumbs' family and recreational activities suffered as a result of her injury, *id.* at 774, and her injury allegedly resulted in the breakup of her marriage. *Id.* at 774–75. The Court of Appeals reduced the jury's $900,000 award to $239,117.75, of which $235,000 represented pain and suffering, mental anguish, and loss of the enjoyment of life. *Id.* at 775.

■ In the instant case, by contrast, plaintiff's injury caused him to lose considerable time from work. Plaintiff's expert, Dr. Thomas, testified that plaintiff's condition could benefit from surgery. Plaintiff had suffered no preexisting back problems, but now, according to Thomas' testimony, plaintiff will always suffer from back pain. Furthermore, Thomas testified that plaintiff's condition is degenerative and is likely to become more severe and disabling in the future. Plaintiff is no longer able to play basketball or engage in other recreational activities that he used to enjoy, and he is unable to do heavy lifting, which is the sort of work he used to do. On the other hand, plaintiff is now gainfully employed as a prison guard.

Based on these facts, which the jury reasonably could have found, it appears that the plaintiff's injury is significantly more severe than the injury held to support a $239,117.75 award in *Gumbs.* On this basis, and in the exercise of the court's discretion in view of the facts of this case, the court finds that the $278,000 award in this case is neither "so grossly excessive that it is not rationally related to the evidence" nor "shock[ing] [to] the judicial con-

science." *Couch, supra,* 667 F.Supp. at 226. *See also Motter v. Everest & Jennings, supra,* 883 F.2d at 1230–32 (affirming a $700,000 verdict, including $400,000 for pain and suffering, for a herniated disc); *Rivera v. Virgin Islands Hous. Auth.,* 854 F.2d 24, 27–28 (3d Cir.1988) (affirming a $250,000 award for pain and suffering due to a herniated disc).

Defendants also argue that the jury's $3,000 award for four years of damages incurred in the past, taken together with the plaintiff's future life expectancy of 42.8 years for someone of his age, race and sex, as determined from a mortality table,[6] supports a maximum award of $32,100 for damages incurred in the future rather than the $275,000 awarded by the jury. Assuming, however, that the jury believed Thomas' testimony that the injury was likely to result in greater pain and disability in the future, it could rationally award a greater amount for future years. Moreover, the jury could rationally conclude that the permanence of the injury—a factor that can be classified as future damages—called for a higher measure of damages than would a temporary injury. Finally, there was testimony that the plaintiff's financial condition had forced him to forgo surgery that might prove medically necessary, and the potential cost of the surgery could be included in future damages.

### G. Plaintiff's Closing Argument

■ Defendants also allege that they are entitled to a partial new trial on the issue of damages because of "plaintiff's counsel [*sic*] improper reference to a specific amount of award which was unsupported by the evidence." Defendants' Memo. at 17. Defendants cite no authority supporting the proposition that it is improper to refer to a specific amount of the award in closing argument. The court notes, however, that the Court of Appeals for this circuit held in the recent case of *Waldorf v. Shuta,* 896 F.2d 723, 744 (3d Cir.1990), that requesting a specific dollar amount for pain and suffering in closing

---

**6.** Given the evidence of the plaintiff's health prior to the accident, the jury was not required to accept the 42.8–year figure contained in the mortality table.

argument is improper in a federal district court as a matter of federal law.

Given the unique status of this court, it is not altogether clear whether *Waldorf* governs this case, or whether the propriety of the closing argument depends on local law. *See Murray v. Fairbanks Morse*, 610 F.2d 149, 152 n. 4 (3d Cir.1979) (in dictum treating this matter as an issue of local law). Although the Federal Rules of Civil Procedure apply to this court in the same manner as they apply to the ordinary United States District Courts, 48 U.S.C. § 1614(b), the position of this court may be different from that of an ordinary United States District Court with respect to the appellate courts' supervisory powers. *See Barnard v. Thorstenn*, 489 U.S. 546, 551–52, 109 S.Ct. 1294, 1298–99, 103 L.Ed.2d 559 (1989).

The Court of Appeals for the Third Circuit, however, would almost certainly reach the same result under local law as under federal law. The reasoning of *Waldorf, supra*, 896 F.2d at 744, that reference to the amount of damages in the closing argument is likely to encourage the jury to "irrationally inflate[ ] the damages award," does not depend on the federal-law context but is equally applicable to Virgin Islands law. The Court of Appeals has long expressed reservations about the propriety of such closing arguments in Virgin Islands cases, although it has repeatedly declined to decide the issue. *See Gumbs, supra*, 823 F.2d at 771. The Virgin Islands statute prohibiting *ad damnum* clauses in complaints, 5 V.I.C. § 5, does not affect the law concerning references to damages at trial. *Gumbs, supra*, 823 F.2d at 771 n. 1. Accordingly, whether the issue is covered by federal or local law, the plaintiff's closing argument was improper.

However, I do not recall the defendants' having made an objection to the plaintiff's closing argument at trial, and the court reporter has not been able to find any such objection in his stenographic notes. If the defendants did not object to the closing argument at trial, then they have waived their right to object to it now. *See Murray v. Fairbanks Morse, supra*, 610 F.2d at 152. Improper reference to the amount of damages in closing argument does not constitute "plain error" reviewable in the absence of an objection. *Id.*[7]

Moreover, even if the defendant did object to the closing argument, the error is harmless. As noted previously, the court must "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Rule 61, F.R.Civ.P.; *see Gumbs, supra*, 823 F.2d at 771 (finding the request for damages in that case to be, at worst, harmless error); *see also Waldorf, supra*, 896 F.2d at 744 n. 31 (whether a request for damages is prejudicial must be decided case by case).

Whenever a litigant requests a specific amount of damages in closing argument, my usual practice is to instruct the jury that it is not bound by the request, but must calculate the amount of damages based on the evidence. I do not recall whether I gave that instruction in this case, and the court reporter has not been able to confirm that I did so. In any event, my general instructions to the jury made clear that they were to consider only the evidence in the case.

Even if I did not give a specific cautionary instruction, the plaintiff's closing argument was not prejudicial. Plaintiff's counsel made no attempt to mislead the jury, which was free to accept or reject her argument, and indeed did reject it by awarding the plaintiff far less than the $784,254.20 that his attorney requested. Plaintiff's counsel made the basis of her calculations clear to the jury with specific references to the injuries suffered by the plaintiff and the plaintiff's future life ex-

---

7. The court notes that the Third Circuit Court of Appeals has long reserved the question of whether such arguments are permissible, and the customary practice in the Virgin Islands as well as the law in the majority of United States jurisdictions is to permit references to the amount of damages in closing arguments.

*Gumbs, supra*, 823 F.2d at 770–71. It would thus be absurd to hold that the closing argument was "plain error"—that is, error so fundamental and highly prejudicial that failure to consider it would result in a miscarriage of justice. *See Bereda v. Pickering Creek Indus. Park, Inc.*, 865 F.2d 49, 53 (3d Cir.1989).

pectancy: she requested $1,210.20 for medical expenses, $1,944 for lost wages, and $781,100 for pain and suffering, calculated at a rate of $50 per day for the 42.8 years of plaintiff's life expectancy. Plaintiff's counsel did not allude to facts outside the record, *see Warner v. Rossignol*, 538 F.2d 910 (1st Cir.1976), nor did she make any "pleas of pure passion" or "appeals to bias and prejudice." *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir.1978); *see Waldorf, supra*, 896 F.2d at 744; *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir.1980). Under these circumstances, though the reference to damages in the closing argument was improper, it could not have "irrationally inflated the damages award," *Waldorf, supra*, 896 F.2d at 744, and it was not sufficiently prejudicial to the defendants to warrant the granting of a new trial. *See Gumbs, supra*, 823 F.2d at 771.

### CONCLUSION

For the foregoing reasons, the defendants' motion is denied in all respects. An appropriate order will be entered.